## Smith v. Commonwealth.

Jan. 18, 1946.

Wm. Lewis & Son for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Tipton Smith, the appellant, and Liza Cotton were jointly indicted in the Clay Circuit Court for the willful murder of Jimmie Sizemore. Motion for separate trials was made and the Commonwealth elected to try the appellant. The jury returned a verdict of guilty and fixed his punishment at 15 years in the State Reformatory. He appeals.

The case was first called for trial at the February term 1945, at which time the appellant insists he was ready for trial but that the Commonwealth announced not ready and thereupon moved the court for continuance to the May term. This motion was sustained. Upon call of the case at the May term of court the Commonwealth announced ready. The defendant moved for continuance because of the absence of M. C. Smith, a material witness. The supporting affidavit and amended affidavit disclosed that if Smith were present he would testify that he was at the Blue Moon Restaurant in Manchester when the difficulty between the deceased, Jim Sizemore, and the defendant, Tip Smith, occurred; that he saw the deceased draw his pistol and point it at the defendant; that at the time Liza Cotton was standing between Sizemore and Smith; that he saw Tip Smith push Liza Cotton aside; that he then saw Tip Smith start to draw his gun and that Sizemore fired the first shot in the

trouble. The affidavits further disclosed that the absent witness, M. C. Smith, was present to testify in the February term of court and recognized to appear at the May term; that he was inducted into the Army the latter part of March, 1945; that appellant did not learn this fact until after Smith had been inducted; that appellant made effort but was unable to learn where Smith was located and could not take his deposition because of his inability to learn of his whereabouts. The court promptly overruled the motion and proceeded with the trial, to which the defendant objected and excepted.

The unfortunate incident occurred about the middle of the afternoon of Sunday, January 7, 1945. The appellant, a veteran of World War 2, had gone to the Blue Moon Restaurant in Manchester. The record discloses that Jimmie Sizemore, who was in the restaurant, was, or had been, playing a guitar and that Liza Cotton had deposited twenty-five cents in the victrola for the purpose of playing some records; that Jimmie Sizemore cut the records off, to which Liza Cotton protested. There appears to have been a repetition of the cutting off of the records by Sizemore, to which not only Liza Cotton protested but to which also the proprietress and an employee in the restaurant protested. There is nothing in the record to indicate that there was any difficulty, quarrel, or even a word spoken between the appellant and Sizemore. In fact the evidence discloses that the appellant said nothing to anyone. He bothered no one and was apparently no more than an innocent bystander.

The chief witness for the Commonwealth was Minnie Rhodes, the proprietress of the restaurant, who testified about the cutting off of the victrola by Jimmie Sizemore; who also said that Tip Smith was doing nothing or saying nothing but that she saw the appellant jerk Liza Cotton from between Sizemore and Smith but that when Tip jerked her out that threw Liza Cotton between her and Sizemore and that she did not know what Sizemore was doing but that she did see Tip Smith flash his gun. Immediately after, and about the time he pushed Liza Cotton aside, she stated there was a shot fired but that she did not know who fired the first shot, and that both the deceased and the appellant fought all over the room and that several shots were fired, and that finally each threw his pistol at the other, and that the appellant

picked up his and ran out the door. Sizemore picked up his and walked across the room and fell.

Mary Jane Smith, who was an employee in the restaurant, then testified for the Commonwealth and corroborated Minnie Rhodes in Sizemore's actions in cutting off the victrola records and also that Tip Smith was saying nothing or doing nothing; stated that she never did see Tip Smith's gun. In fact, she saw no gun until the shooting was over, when she saw Jimmie Sizemore's gun and that two shots had been fired from his pistol. The remainder of the evidence had to do with the number of shot wounds inflicted upon the deceased, and of his death on the way to the hospital.

The defendant himself testified in substance what Minnie Rhodes and Mary Jane Smith testified—that he had said nothing to the deceased; that he had said nothing to Liza Cotton; that neither of them had said a word to him; that he was listening to the music but that he did hear the protests made by Liza Cotton, Minnie Rhodes and Mary Jane Smith; that when Liza Cotton had made her last protest, he saw Jimmie Sizemore jerk his pistol in a threatening manner, at which time not knowing who he was going to shoot, he pushed Liza Cotton aside and immediately drew his gun; that Sizemore pointed his gun directly at him and fired; and that he immediately thereafter commenced shooting.

He further testified to the wrestling and fighting in the restaurant as was testified to by the Commonwealth's witnesses.

Liza Cotton, who was jointly indicted with him, corroborated him fully in his statement as to who first drew the gun and fired first.

The court refused to permit the reading of the affidavit for continuance.

The other testimony had to do with the gun of the deceased, which disclosed that two shots had been fired from the gun and that the gun had snapped two or three times. A number of witnesses were then introduced who testified of the defendant's good reputation for peace and quietude.

The appellant complains, and justly so, about the overruling of the motion for continuance and the refusal to permit the reading of the affidavit. In brief of Com-

monwealth it is claimed that the evidence of the absent Smith would have been merely cumulative. That position is not well taken in view of the fact that the only other defense witnesses who testified about the same facts as set out in the affidavit, were the defendant and Liza Cotton, who were under joint indictment. On the contrary, the very fact that Liza Cotton, who according to this record had not even spoken to the defendant and had done nothing more than repeatedly protest the cutting off of the records by Jim Sizemore, for the playing of which she had deposited her twenty-five cents, was jointly indicted with the defendant, supports the position of the defendant in his contended importance of having the absent Smith present to testify.

It is true, in accordance with the rules set out in Sherrill v. Commonwealth, 290 Ky. 386, 161 S. W. 2d 615, and numerous other cases, that this court will not reverse a judgment because of the refusal of the trial court to grant a continuance unless it is clearly made to appear that there is an abuse of discretion.

At a time when boys were being inducted into the Army by rapidly successive calls, to impose upon the defendant the duty of watching the calls of the draft board and the use of other means and methods to ascertain the time of call would be an unjustifiable requirement. The least that should have been done with this disabled veteran would have been to admit the affidavit subject to competency, and if the Commonwealth then elected to go to trial, thereafter to permit the reading of the affidavit.

There is yet an additional reason for reversal herein. The appellant complains of Instruction No. 4, which is as follows:

"If you shall believe from the evidence that at the time the defendant Tipton Smith shot and wounded the deceased, Jimmie Sizemore, if he did so do, he believed, and in the exercise of a reasonable judgment had reasonable grounds to believe that he, or Liza Cotton, or any other person then and there present and acting with him, if any such there were, was then and there in the danger of the infliction of death, or some great bodily harm at the hands of said Jimmie Sizemore and that it was necessary, or appeared to him in the exercise of a reasonable judgment, to be necessary to so

shoot and wound the said Jimmie Sizemore in order to avert that danger, either real or to the defendant apparent, then you should acquit the defendant on the ground of self-defense, and apparent necessity therefor, or the defense of another, and apparent necessity therefor, unless you shall further believe from the evidence beyond a reasonable doubt that the defendant Tipton Smith wilfully and voluntarily engaged in a mutual combat to and with the deceased Jimmie Sizemore, and thereby brought about or created the danger, real, or to the defendant apparent, to himself or any other person then and there present and acting with him, if any such there was, in which event, if you shall so believe from the evidence beyond a reasonable doubt, you should not acquit the defendant on the ground of self-defense, or the defense of another, or apparent necessity therefor, but should find him guilty of wilful murder, and fix his punishment as set out in Instruction Number 2 above.''

The first objectionable part of the instruction above is that portion which reads, ''and in the exercise of a reasonable judgment had reasonable grounds to believe that he, or Liza Cotton, or any other person then and there present and acting with him, if any such there were, * * *.'' The evidence in this case does not justify such an instruction. There was no evidence that anybody was acting with him.

The second objectionable part is that portion of the instruction submitting the qualification of mutual combat.

We have held that it is error to qualify a self-defense instruction on the theory of mutual combat unless there is some evidence or facts on which such instruction can be predicated. See Taylor v. Commonwealth, 281 Ky. 442, 136 S. W. 2d 544, and cases cited therein. There is no evidence in this record of any agreement or mutuality of desire to engage in combat. A simple instruction on defense of self and others would have sufficed. See Stanley on Instructions.

We refrain from passing upon the question raised by the appellant relative to a directed verdict, since the case must be reversed on other grounds, and further since the evidence in another trial might be somewhat different.

The judgment is reversed.