# Crigger v. Commonwealth.

December 9, 1949.

Francis M. Burke for appellant.

A. E. Funk, Attorney General, William F. Simpson, Assistant Attorney General, J. A. Runyon, Commonwealth Attorney 35th Judicial District, and W. A. Daugherty for appellee.

JUDGE LATIMER—Reversing.

Appellant was convicted of voluntary manslaughter and his punishment fixed at 21 years confinement. He is here urging reversal insisting the court erred (1) in qualification of the self-defense instruction, and (2) in admitting incompetent evidence.

In order to get a correct picture for our consideration of the grounds above, we will briefly, but substantially, set out the evidence for the Commonwealth. Mrs. Varney, widow of the deceased, stated that the difficulty began while her husband was sitting in the yard. She said that she was in the kitchen and "the first thing I knowed I heard Cecil (appellant) calling him (Mel Varey) a 'God damned son of a bitch' and he asked him not to call him that and he begged him all the time and Mel went out there." She said Mel shot two or three shots and then followed appellant to his home.

The Criggers and Varneys were neighbors. The Criggers and Wayne Simpsons lived in a duplex, ap-

parently built in a customary mining camp manner. One-half of the building had two rooms downstairs and two upstairs with a solid partition in the middle of the building. The other half was of a similar arrangement. There was a porch on each end. The Varneys lived in an adjoining house. A high wire fence separated the properties.

It appears that appellant was on his way into his home, and in his own yard, when the trouble arose. After an exchange of words, Varney followed Crigger to his home and invited him out, insisting that he "take back" the name he had called him. At that time Crigger took his shirt and undershirt off and was insisting Varney shoot him, when Crigger's brother stepped in between them and took Crigger to his house. Officers were called. They came but left after about five minutes, believing the difficulty to be over. Appellant then left his house (he said for the purpose of going after his wife and children) when trouble again started. It appears that Varney first tried to pull Crigger over the fence. He later hit him over the head with the butt of his gun knocking him down. At this moment Mrs. Varney appeared on the scene. She stated that Crigger, while lying on the ground, was trying to get his knife out; and that her husband hit him again with his pistol and took the knife away from him. Mrs. Varney and her husband then left Crigger lying on the ground and, instead of returning home, were proceeding into the home of Simpson, who lived in the other end of the building occupied jointly with Crigger. Crigger got up and went into his house with blood streaming over and down his face. (He said he got his gun for protection; that he was going to a doctor to have his wounds treated; that when he got out on the steps Mel Varney was standing on the steps of his neighbors with his two hands on the pistol pointing directly at him; and that he then leveled his shotgun and shot him.)

Mrs. Varney did not see what her husband was doing at the time he was shot but said when she heard the blast from the shotgun she turned and saw her husband sinking to the steps with his gun in his right hand.

Under the above evidence, the court gave a self-

defense instruction qualified by "unless you further believe from the evidence beyond a reasonable doubt that the combat was willingly and voluntarily engaged in by both the defendant and the deceased with the intention on the part of each to kill the other, or to do him great bodily harm, in which event the defendant cannot be acquitted on the ground of self-defense or apparent necessity.".

While strenuously denying the evidence authorized the above qualified self-defense instruction, appellant insists, if sufficient, it was the further duty of the court to instruct relative to the bringing on of the difficulty. It is insisted that even though appellant was responsible for the difficulty, but in good faith withdrew, or attempted to withdraw, he could yet invoke the right of self-defense.

It is further insisted that appellant was entitled to an instruction that language used by appellant, however abusive, did not justify an assault and battery by the deceased and that when Varney made such an assault appellant had the right to repel the assault and battery.

It appears to us that appellant's contentions are meritorious. However, in view of our conclusion in the matter, it becomes unnecessary to discuss them.

The qualification in the instruction goes to the matter of mutual combat. Looking at the evidence from the most favorable position for the Commonwealth, we fail to see any facts supporting a mutual combat theory. We have a man going to his own home. He said that the deceased first called him a "God damned son of a bitch." Whereupon, he retorted by calling him the same thing. The wife of the deceased says that the first she heard was appellant using this abusive language toward her husband. She said her husband shot into the ground and then followed appellant to his home. All the evidence indicates that the deceased was the aggressor. He is the man who started out with the gun. He is the man who bludgeoned the appellant. He is the man who, instead of returning to his home, walked into the yard of appellant. He had the gun in his hand according to his wife. Mr. Simpson, on whose steps Varney met his death, testified that Varney was pointing the gun at

Crigger at the time Crigger fired the fatal shot. There is no evidence at all here of mutual combat. Appellant, under these circumstances, was entitled to a straight out unqualified self-defense instruction. See Smith v. Commonwealth, 301 Ky. 364, 192 S. W. 2d 92. For that reason the judgment will have to be reversed.

We touch lightly now on the matter of incompetent evidence. We find very little of merit in the argument relative thereto. The court should permit the defendant to show that Wayne Simpson was summoned as a witness by the Commonwealth at the examining trial but that the Commonwealth failed to use him. Evidence as to where appellant purchased his wine is wholly immaterial.

The judgment is reversed for proceedings consistent herewith.