## STACY v. COMMONWEALTH.

Court of Appeals of Kentucky.

Feb. 6, 1953.

Francis M. Burke, W. A. Daugherty, Pikeville, for appellant.

J. D. Buckman, Jr., Atty. Gen., and H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

DUNCAN, Justice.

Under an indictment charging willful murder, the appellant was convicted of voluntary manslaughter and his punishment fixed at imprisonment for a period of fifteen years. Upon this appeal, it is insisted that the judgment should be reversed because: (1) Appellant was entitled to a peremptory instruction; (2) The instructions to the jury were erroneous; and (3) Incompetent evidence was admitted over the objection of appellant.

On the night of August 27, 1949, the deceased, Avery Abshire, in company with Wayne Bishop and Lester Lee Matney, went to the home of K. B. Miller on Feds Creek in Pike County, Kentucky. While there, some trouble occurred and Abshire struck Miller over the head with a pistol and shot at James Barber, who also was at the Miller home. Barber immediately left the scene of the trouble and went to the home of L. C. Robinette, a deputy sheriff, who resided near by.

After being informed of the difficulty by Barber, Robinette started to the Miller home, apparently for the purpose of suppressing further trouble and arresting the offenders. On the way, he met deceased in his jeep, accompanied by Bishop and Matney. Deceased refused to stop at the request of the officer and proceeded down the highway at a high rate of speed, forcing Robinette's car off the road. The latter turned his car and pursued the jeep, later finding the deceased and his companions parked on the side of the road. An arrest was attempted, but deceased refused to submit and drew a pistol upon the officer. Concluding that wisdom was the better part of valor, Robinette returned to his home, leaving the deceased and his companions where he had found them.

Later in the same evening or in the early morning of August 28, James Barber procured a warrant against deceased, Bishop and Matney, charging each with a felony in connection with the trouble which had occurred in the Miller home. The warrant was delivered to Robinette after he had returned to his home, but no immediate ef-

fort was made to serve it. On the following morning about 9 o'clock, Robinette secured the assistance of Troy Bevins and Frank Phillips, two other deputy sheriffs, residing in that vicinity, and they proceeded to serve the warrant. These officers were successful in locating Bishop and Matney, each of whom was taken into custody, but were unable to find deceased at the home of his father or other places where inquiry was made. On the way to Pikeville with Matney and Bishop in custody, the officers met appellant John Stacy, who also was a deputy sheriff. Deputy Bevins desired to go to his home and he left the other officers, and Stacy accompanied them to Pikeville, where Matney and Bishop were placed in jail.

On the return trip, Phillips stopped at his home and Robinette and appellant proceeded toward their homes. Soon after leaving Phillips, the officers testified, they observed the deceased parked in his jeep on the side of the road. According to appellant and Robinette, they stopped their car and went to the jeep for the purpose of placing deceased under arrest. Appellant, who was slightly in front, went to the driver's side of the jeep, opened the door, and informed deceased that he was under arrest. Deceased immediately fired at appellant, and thereupon, Robinette and appellant fired at him. Appellant then ran to the rear of the jeep and Robinette to the front. Deceased fired two shots toward Robinette, and appellant fired two shots at deceased from his position behind the jeep. The officers heard the sound of a falling object striking the metal floor of the jeep and upon approaching and investigating found that deceased was wounded and had dropped his gun. Deceased was removed and placed in the officer's car and died while on the way to a doctor. The pistol recovered from the jeep is what is referred to as a .32-caliber squeezer, and had three fired shells and two loaded ones in its chamber. The testimony of the undertaker indicates that there were two wounds on the body of the deceased which appear to have been made by the same bullet. The comparative size of the wounds indicates

that the bullet entered in the back near the right shoulder and emerged in the front left chest.

There were no eyewitnesses other than appellant and Robinette, but their testimony is contradicted by Joe McCoy, a fifteen year old boy, and Lawrence Justice. McCoy testified that at the time of the shooting he was on a front porch about a quarter of a mile away but in sight of the jeep in which deceased was sitting. He stated that although he was not in a position to observe all the parties clearly or recognize the participants he saw some man in a white shirt run to the rear of the jeep from its right side and immediately heard three shots fired rapidly followed by a pause and then a fourth shot. Lawrence Justice, who resided about five hundred yards from the place of the shooting, testified that he heard three shots fired in rapid order and a fourth shot which followed after a pause of a few seconds. This witness, who claimed some familiarity with firearms, stated that in his opinion all the shots were fired from the same caliber weapon, which was either a .44 or .45. In connection with the testimony of these witnesses, it should be remembered that according to the testimony of appellant and Robinette there were at least seven shots fired from three different guns, all of different caliber.

Appellant insists that the uncontradicted testimony establishes a case of justifiable homicide upon either the theory of self-defense or the exercise of his authority as an officer. We recognize the rule that when evidence is as consistent with a defendant's innocence as with his guilt a verdict of acquittal should be directed. However, as we view the testimony, there was a clear issue for the jury in this case. There was substantial contradiction of the testimony of appellant and Robinette as to the number of shots which were fired, and if their testimony in that respect is untrue, it casts considerable doubt upon their entire account of the facts surrounding the shooting. There also are some improbabilities in their testimony which, standing alone, would be sufficient to make an issue for the jury. It is highly unlikely that as many shots as claimed by them could have been fired by three separate persons within a few feet of each other without more than one of the shots taking effect.

Appellant complains of Instructions 5, 6, and 7, and insists that they were prejudicially erroneous. Instructions 5 and 6 define generally, and we think substantially correctly, the rights of the appellant and Robinette, as officers, and the duty of deceased to submit to arrest. Although usually contained in one instruction, it is certainly not improper to separate the instruction concerning the rights and authority of the officer from the one which defines the duty of an accused in submitting to arrest.

We observe that Instruction 6 refers to the duty of deceased to submit to an arrest *lawfully made* (emphasis ours). The words "lawfully made" serve no useful purpose in the instruction and may possibly be misleading to the jury. By Instruction 5, the jury had been informed of the circumstances under which the officers were authorized to make an arrest, and any arrest made under the circumstances described by that instruction was a lawful arrest. There was no occasion to include the words in a subsequent instruction, which might have led the jury to believe that they had the right to determine the legality of the arrest by some standard other than that set out in the preceding instruction. We do not think the error, standing alone, would be sufficient to justify reversal, but since we are reversing for other reasons, we have mentioned the error so that it will not be repeated.

Instruction 7 was as follows:

"You are further instructed that it was the duty of the defendant, John Stacy, and his companion, L. C. Robinette, to use such force, and only such force, as appeared to them to be reasonably necessary to arrest Avery Abshire, that if the jury believe from the evidence beyond a reasonable doubt that they used greater force and thereby provoked an affray in which they shot and killed Avery Abshire, then the jury will find the defendant guilty of voluntary manslaughter as defined

in Instruction 2 and fix his punishment at confinement in the state penitentiary for not less than two nor more than twenty-one years."

Although not expressly made so by its terms, the instruction was, apparently, intended as a qualification of either the self-defense instruction, given as Instruction 4, or the officer instruction, given as Instructions 5 and 6. We do not find that an instruction has ever been previously given so limiting or qualifying the right of an officer in making an arrest. Whether the right of an officer may in any event be limited, and his right to make the arrest destroyed by the use of excessive force which incites an affray, are not determined here. Since there is no evidence upon which an instruction could have been based, either as affecting appellant's right of self-defense or as limiting his authority as an officer, the instruction was erroneous. It has always been recognized that the giving of an instruction which qualifies or limits the right of self-defense is prejudicial in the absence of evidence to support it. Correll v. Commonwealth, 245 Ky. 5, 53 S.W. 2d 199; Smith v. Commonwealth, 301 Ky. 364, 192 S.W.2d 92; Crigger v. Commonwealth, 311 Ky. 682, 225 S.W.2d 113.

The complaint as to incompetent evidence relates to testimony concerning a possible change in the warrant of arrest for deceased and his companions. It appears that the warrant, as originally written, charged the deceased as "Avery Bishop." The last word was stricken by a line drawn through it and the word "Abshire" was inserted immediately above the word "Bishop." It appears that such change as had been made in the face of the warrant was prior to its delivery to the officers. There was no question concerning its validity, and the testimony attacking it by inference was erroneous.

The Commonwealth also was permitted to show that Bishop and Matney were not taken before a magistrate before they were placed in jail. It may be observed that the arrest was made on Sunday and there was no obligation under the circumstances for the officers to take them before a magistrate for the purpose of making bond. However, in any event, the testimony could have shed no light on subsequent events, and we are unable to conceive of any ground for its admission. The testimony was clearly incompetent.

The judgment is reversed.