**Earl MOORE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 30, 1955.

Clark Pratt, Hindman, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

Earl Moore, Glennis Moore, and John Moore, Jr., were jointly indicted for the malicious shooting and wounding of Astor Watts with the intent to kill, but from which shooting and wounding Watts did not die. The indictment charged that the name of the defendant who did the shooting was unknown to the grand jury

, and that the other defendants aided and abetted.

Earl Moore was tried first, found guilty, and his punishment fixed at confinement in the state reformatory for two years. He appeals. He urges the following grounds for reversal: (1) the proof is insufficient to support the verdict; (2) the court should have instructed the jury on the lesser degrees of the offense charged; and (3) the court should not have instructed the jury that they could convict the defendant as an aider and abettor.

Early in the morning during June 1953, Astor Watts, a fifteen-year-old boy, went squirrel hunting. He was engaged in watching for squirrels in a mulberry tree on a wooded mountainside. He had been hunting for an hour or more but had not fired a shot. While seated on a cliff above the tree, with his hands on his knees, he was hit by a shot fired from a shotgun. Part of the shot fired struck around the left side of his face, in his left eye, in both arms, two went up his nose, and some in his chest. Astor fell from the rock upon which he was sitting and made an outcry.

The three Moore brothers then approached him, broke their guns down, and asked him if he thought they shot him. Astor replied that he did not, giving as his reason for the answer that he thought they would shoot again. The three brothers walked a short distance away and talked among themselves. John Moore, Jr., left to get help. Earl and Glennis Moore then discharged their guns, firing five shots, and gave as their reason for so doing that they heard someone.

Watts stated that the presence of the Moore brothers was unknown to him until he heard Glennis Moore cough, at which time he saw Glennis directly to his right. As he looked in that direction, the shot was fired. Just after he was shot, Astor saw Earl Moore down below Glennis. It was two or three minutes after the shot before he saw John Moore, Jr., straight down the hill from him. The shot ranged from the direction of Earl. Nothing was said as to the distance between the three brothers.

Astor Watts resided on a farm adjoining the Moore farm and had been a lifelong acquaintance of the Moore brothers. He did not testify that any ill feeling existed between them before the shooting. The tree where he was hunting was located on land owned by Frank Moore, father of appellant. He had hunted on the Frank Moore land at other times, with permission and without objection by the brothers.

The complaining witness made conflicting statements about who did the shooting, saying at the hospital and before the grand jury that Glennis Moore fired the shot but contradicting this on the trial of the indictment by saying that Earl Moore had fired the shot.

The testimony of the three brothers was substantially the same. They had decided to go squirrel hunting and were attracted to the site where Watts was shot by hearing a gun fire and his "crying and going on" just after the shot. They looked about a half hour before they located Watts under the mulberry tree. Watts told them that he didn't know who shot him. Each of the Moores denied that he or his brothers shot Astor Watts or that there had been any previous trouble with him.

The third ground urged for reversal will be considered first. The court instructed the jury that if they believed that Earl Moore did the shooting or if he was present, aiding and abetting either of his brothers who did the shooting, they were justified in convicting him. The rule is that a conviction is not justified by suspicion and evidence of relationship among the accused or by their mere association at a time when a crime was committed by one of them. Mere acquiesence in, or approval of, the criminal act, without cooperation or agreement to cooperate in its commission, is not sufficient to constitute one an aider and abettor. Hurst v. Commonwealth, 284 Ky. 599, 145 S.W.2d 520; Bradley v. Commonwealth, 201 Ky. 413,

257 S.W. 11; and McKinney v. Commonwealth, 284 Ky. 16, 143 S.W.2d 745.

▮ The mere presence at the scene of a crime is not sufficient to attach guilt to the accused, but other facts and circumstances must be shown connecting him with the affray to justify submission of the case to the jury. Collins v. Commonwealth, 309 Ky. 572, 218 S.W.2d 393; Crabtree v. Commonwealth, 312 Ky. 738, 229 S.W.2d 752; and Fairchild v. Commonwealth, 312 Ky. 741, 229 S.W.2d 754.

▮ To constitute one an aider and abettor, he must not only be on the ground, and by his presence aid, encourage, or incite the principal to commit the crime, but he must share the criminal intent or the purpose of the principal. Whitt v. Commonwealth, 221 Ky. 490, 298 S.W. 1101.

▮ The evil effect of giving the aider and abettor instruction where the facts are such as in this case is pointed out in Napier v. Commonwealth, 306 Ky. 75, 206 S.W.2d 53. With such an instruction being given, it is impossible to determine whether the jury convicted Earl Moore as the principal who fired the shot, or whether they gave weight to the erroneous instruction and found that Earl Moore was an aider and abettor to one or the other of his brothers, without determining which of them fired the shot. The viciousness of the instruction is that it has the effect of permitting the jury to believe that one of the three fired without requiring them to find which of the three charged with firing the shot actually did so. Especially is this true in view of the lack of evidence in this case that any of the brothers was acting in concert with the other two or had any previous notice or knowledge that a shot was going to be fired at Astor Watts. We, therefore, conclude that the giving of such instruction was prejudicial error.

As to the error complained of that the court should have instructed on the lesser offense of reckless use of weapons, we find no merit since there was a complete absence of evidence upon which to base such an instruction. Hurst v. Commonwealth, 284 Ky. 599, 145 S.W.2d 520; and Tipton v. Commonwealth, Ky., 250 S.W.2d 1015.

The record does not disclose that any motions were made for a directed verdict either at the close of the Commonwealth's testimony or at the close of all of the testimony, and in view of our earlier conclusion, we do not find it necessary to pass upon this ground for reversal.

Judgment is reversed.