**Maurice WARFIELD, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 22, 1960.

Chester O. Carrier, Leitchfield, for appellant.

Jo M. Ferguson, Atty. Gen., Paul E. Hayes, Earle V. Powell, Asst. Attys. Gen., for appellee.

BIRD, Judge.

Maurice Warfield was convicted on a charge of aiding and abetting his son, W. T. Warfield, in the murder of Harold Miller. His punishment was fixed at two years in the penitentiary. He appeals.

His grounds for reversal are threefold. First, he claims that the trial court erred in not sustaining his demurrer to the indictment. Second, he complains that the indictment was not read to the jury as required by law. Third, he claims that the trial court erred in not sustaining his motion for a directed verdict.

Arguments pertaining to the first and second grounds have been ably presented to this Court. However, upon examination of the pertinent authorities we have concluded that a substantial compliance with the law was had in each instance and that no prejudicial error resulted. Further writing on the matter will serve no useful purpose.

■ The third ground challenges the sufficiency of the evidence. Before examining the testimony let us determine what it takes to constitute the crime of aiding and abetting. Our enunciation of the law in Roberts v. Commonwealth, 212 Ky. 791, 280 S.W. 111, 112, positively designates the requisites. In that case we said:

"In order to constitute one an aider or abetter in the commission of a crime he must be actually or constructively present at the time of its commission and participate in some way in the act committed. It is not essential that there should be a prearrangement or mutual understanding or concert of action, but in the absence of these, it is essential that the one so charged should in some way either by overt act or by expression or advocacy or sympathy encourage the principal in his unlawful acts."

A negative view is seen in Moore v. Commonwealth, Ky., 282 S.W.2d 613, 614, cited by appellant. There we said:

"(1, 2) * * * The rule is that a conviction is not justified by suspicion and evidence of relationship among the accused or by their mere association at a time when a crime was committed by one of them. Mere acquiescence in, or approval of, the criminal act, without cooperation or agreement to cooperate in its commission, is not sufficient to constitute one an aider and abettor. Hurst v. Commonwealth, 284 Ky. 599, 145 S.W.2d 520; Bradley v. Commonwealth, 201 Ky. 413, 257 S.W. 11; and McKinney v. Commonwealth, 284 Ky. 16, 143 S.W.2d 745."

Thus we see what does and what does not constitute the crime. Let us look therefore to the testimony introduced by the Commonwealth and examine it in the light of these authorities.

■ The killing happened on a road leading to the place of a homecoming celebration in Grayson County. Maurice Warfield and his son, W. T. Warfield, were at the place when the deceased, Harold Miller, arrived in an automobile driven by Marvel Lee Beatty. The first witness introduced by the Commonwealth was Beatty. We find this brief account of what happened in his testimony:

"19 A. * * * We got down there in sight of the lights and the traffic was heavy; cars were parked on each side of the road, and there was a boy standing in the middle of the road, and I tapped my horn at him, so, he stepped back out of the road and I pulled up a few feet, and Maurice Warfield was standing, leaning against a car fender and when I stopped even with him there, he said, 'You got a pretty horn; blow it again,' so I tapped it again and when I done that, he hit me. I pulled on up, and he come running up cursing, and W. T. Warfield was with him then. He had a gun and pulled it on me. I said, 'What is the matter with you fellows? We are not looking for trouble,' and when I said that, W. T. went around and stuck the gun at Miller and I said, 'Get that gun out of the car,' and when I said that, he shot Harold."

Further in Beatty's testimony he elaborated as follows:

"Q. 50 At the time he came up the first time and hit you through the window, did you see W. T. Warfield, his son? A. Not at that time; no, sir.

"Q. 51 Then when you stopped the second time, what happened? A. He and W. T. both came running up.

"Q. 52 Both of them? A. Yes, sir.

"Q. 53 How far had you gone from where you first stopped? A. Just a few feet. Probably fifteen or twenty. I don't know exactly.

"Q. 54 Why did you stop the second time? A. The traffic ahead had stopped.

"Q. 55 Now then, when Maurice Warfield and his son came up after you stopped the second time, did either of them say anything? A. Maurice was cursing. W. T. didn't say anything, to me.

"Q. 56 Did Maurice call you anything; any names? A. He called me a son-of-bitch.

"Q. 57 Did he come on your side of the car? A. Yes, sir.

"Q. 58 And did W. T. come up on your side of the car? A. Yes, sir.

"Q. 59 After Maurice called you a son-of-bitch, what did W. T. do? A. He went around the car, and stuck the gun in and shot Harold."

Other witnesses for the Commonwealth stated that both father and son were drunk, going about together with their shirttails out. It was further stated by witnesses for the Commonwealth that, prior to the trouble with Beatty and Miller, the son, in the presence of his father, asked for his gun and said, "I might want to shoot some of these ignorant sons-of-bitches." There are still other bits of testimony tending to establish a generally belligerent attitude on the part of both father and son.

We have, we believe, pointed up enough of the evidence to show that there is more in this case than the simple, innocent relationship mentioned in Moore v. Commonwealth. It is our opinion that we here have proof of the overt act of encouragement required in Roberts v. Commonwealth.

The evidence reveals a belligerent, drunken son with shooting on his mind. Under these conditions it would take very little encouragement on the father's part to incite the son to violence. Witnesses for the Commonwealth say that the father started the fight with Beatty without provocation and, as could well be expected, the belligerent son joined in the trouble and did the shooting. Perhaps the father did not foresee the tragic end but the jury from the evidence could have well believed that the father's belligerence put the deadly force in motion.

One who sets the stage for another's violence will not be held blameless simply because he could not anticipate the ultimate result.

A different story of the whole affair is related by the father and son. However, we need only determine whether the Commonwealth introduced sufficient evidence to take the case to the jury. It is our opinion that it did.

We find no prejudicial error and the judgment is therefore affirmed.