Mack **HUNT**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 30, 1972.

E. R. Gregory, Bowling Green, for appellant.

Ed W. Hancock, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Chief Justice.

Appellant Mack Hunt was indicted for two crimes of storehouse breaking (KRS 433.190) and was convicted of being an aider and abettor to one of them. He was sentenced to serve two years in the state reformatory. He appeals from the judgment, which we affirm.

Hunt argues that the evidence was not sufficient to uphold the conviction; the court erred in allowing the jury to consider the uncorroborated testimony of alleged accomplices; there was error in admitting conjectural and speculative testimony; and there was a procedural error in the joinder of the indictments for trial.

On December 29, 1970, a grocery store owned by Mr. and Mrs. Willard Weaver, located on Cemetery Road in Claypool, Kentucky, about halfway between Bowling Green and Barren River Reservoir, was broken into and merchandise taken. On January 24, 1971, Mr. and Mrs. Weaver were alerted to another attempt to rob the store. Mrs. Weaver testified that on the second occasion she saw a man with a bald spot whom she thought she recognized as Bobby Joe Belk appear from the basement door of the store and jump over the backyard fence. Mr. Weaver testified that he and others who had gathered because of the commotion saw a white Cadillac drive very slowly past the store in the direction of Bowling Green. Earlier Mr. Weaver had seen the same car pass going in the opposite direction, therefore he followed the Cadillac, obtained its license number, and reported these occurrences to the Warren County sheriff. Just before the Cadillac reached Bowling Green it was stopped by the sheriff. The driver was appellant Hunt and he was accompanied by two passengers, Marie Martin and Margaret Rumple. Later that same day Belk was arrested while walking toward Bowling Green, approximately four miles from Weaver's store.

After some investigation a search warrant for Belk's apartment was obtained, and some of the merchandise taken from Weaver's Grocery on December 29, 1970, was found there. The record shows that Belk and Hunt were jointly indicted for the storehouse breaking of January 24, 1971. Even though Hunt designated the entire record, no indictment for the storehouse breaking of December 29, 1970, was included. However the transcript of evidence and the trial orders show that Hunt was indicted for that offense. The Commonwealth obtained a severance and Belk was tried first and convicted of the charges on each of the breakings. Over Hunt's objection the two charges against him were consolidated for trial, however, at the close of the Commonwealth's case the court sustained Hunt's motion to direct a verdict of acquittal as to the charge based on the December 29, 1970, incident.

Margaret Rumple, a friend of Belk who was staying in his apartment while seeking employment, testified that Hunt was also living with Belk. She told that on the night of January 23, 1971, they had a party which was attended by Marie Martin and others, that they had been drinking for quite a while, and that some time after midnight it was suggested that she, Marie, Belk and Hunt go for a ride. She said she was too tired to go but they insisted. Hunt drove them out Cemetery Road for what seemed to be several miles when the car stopped and Belk got out in front of what she later learned was Weaver's store. She testified, "I asked him (Belk) where he was going and he said shut up and I said you don't have to get huffy about it or something like that." She further testified that after Belk left the car she " * * * asked Hunt what was going on and he said I told you to be quiet and I said I want to know what is going on. I am going to get out of this car. I am going back to Bowling Green; and he said you are not going anywhere." * * * "He said we will sit here until daylight and then we will start toward Bowling Green and I am sure Bob got away and we will pick him up on the way back in."

Afterward they went down the road and stopped at a point and had some drinks, then turned around and went back to the place where Belk had gotten out. They turned around again and drove to a place near Barren River Reservoir, where they again stopped and drank some more. Margaret Rumple was asked whether she knew why they had spent the night parked on the side of the road rather than going back to Bowling Green. She testified, "All I know is that he (Hunt) said we were going to wait there for Bobby until daylight. * * * and then we were going to start back in and look for Bobby on the way in and pick him up." Afterward they started toward Bowling Green driving at a slow rate of speed. When they passed Weaver's store two men were seen walking down the road with guns. They continued to drive slowly toward Bowling Green. A car came up behind them but did not pass, instead it turned around and drove in the opposite direction, and they continued on their way. Before reaching Bowling Green they stopped again and had some more drinks. They did not see Belk again that night. At about daylight they were stopped by the sheriff.

Marie Martin testified that on the night of January 23, 1971, she attended the party at Belk's apartment and they all drank "pretty heavy." She said that sometime after midnight Belk suggested they all go for a ride. She had no idea where they were going but they were heading toward Barren River when Belk got out in the vicinity of a store near his father's farm. She said she did not know what store it was, but thought it was Weaver's, and she did not know why Belk got out of the car at that time and was not aware of any plan to break into the store. At one point in her testimony this witness said they had gone past the store to pick up Belk.

Hunt argues that the mere fact there was evidence he was in the company of the convicted principal prior to the commission of the crime and was found present in the vicinity of the place of the crime is not enough to hold him culpable. He further asserts that no evidence was presented to show that he "collaborated, schemed or knew of the intended crime," and by the testimony of the Commonwealth's own witnesses (Margaret Rumple and Marie Martin) he never left his car during the time of the break-in.

In support of his contentions Hunt cites Moore v. Commonwealth, Ky., 282 S. W.2d 613 (1955), wherein we said:

"The rule is that a conviction is not justified by suspicion and evidence of relationship among the accused or by their mere association at a time when a crime was committed by one of them. * * * The mere presence at the scene of a crime is not sufficient to attach guilt to the accused, but other facts

and circumstances must be shown connecting him with the affray to justify submission of the case to the jury."

We find, in addition to Hunt's association with Belk, there were constructive presence and other facts and circumstances sufficient to connect Hunt with the commission of the crime. In Hartman v. Commonwealth, Ky., 282 S.W.2d 48 (1955), it was noted:

"We have many times held that in order to constitute one an aider and abettor it is not necessary to go so far as to show that he was *actually* present at the same time the crime was committed and took a part therein, but that one may be convicted if it is shown that he was constructively present at the time of its commission and participated in some way in the crime committed."

In Commonwealth v. Allen, Ky., 441 S.W. 2d 424 (1969), we said the elements of "constructive presence" are satisfied if the aider and abettor can:

"(1) arrive on the scene if necessary to render aid and assistance in the perpetration of the crime, or (2) watch out for trouble and give the perpetrator of the crime information of the approaching danger, or (3) take part in aiding the escape of the perpetrator after the commission of the crime."

We consider the jury could infer that Hunt was taking part in aiding Belk's escape, from Hunt's movements in the area coupled with the statements of his intention to pick Belk up. Hunt's demeanor toward Margaret Rumple's inquisitiveness when Belk departed, Hunt's denial of her request to immediately return to Bowling Green, his explanation that they would wait for Belk until daylight, his statement that he was sure Belk got away and that they would pick him up on the way back to Bowling Green—all illustrated that Hunt was there to be of aid to Belk.

■■ Hunt claims that the court erred in allowing the jury to consider the un-corroborated testimony of accomplices. In so arguing Hunt avers that Marie Martin and Margaret Rumple were accomplices to the breaking because "Both of these women did the very same thing that the Appellant, Mack Hunt, did on the night of the break-in of January 24, 1971." In order for one to be adjudged an accomplice he must share the criminal intent or purpose of the principal. Helton v. Commonwealth, Ky., 244 S.W.2d 762 (1951). There was no evidence that either of these women had any knowledge of an intended crime, therefore, we hold the trial court correctly found that they were not accomplices. There was no error in convicting on their testimony.

■ Hunt next contends that the court erred in admitting conjectural and speculative evidence. On redirect examination by the Commonwealth, Marie Martin testified as follows:

"Q85. Mrs. Martin, you testified that you let Bobby Belk out and you went on past the grocery store?

A. Yes, sir.

Q86. Then you came back past the store?

A. Yes, sir.

Q87. Now, why did you come back past the store, if you know?

A. To pick up Bobby, I guess.

Mr. Gregory: We object to speculation as to why they came back as it would not be competent and it is a conclusion of the witness.

The Court: Overruled.

Mr. Gregory: Exception.

The Court: Go ahead."

In support of his argument that the court erred in not ruling Marie Martin's response to the Commonwealth's question as incompetent testimony, Hunt cites Collier v. Commonwealth, 303 Ky. 670, 198

S.W.2d 974 (1947). There we said, "* * * such expressions as 'I thought', 'I suppose' and 'I believe' do not always indicate a conjecture or guess at the facts, but that such expressions are often an idiomatic or colloquial way of stating a fact according to the best judgment of the witness." We believe that the trial court is in the best position to evaluate a witness' testimony in order to determine whether he is speaking from the knowledge of facts that he has sensed and through an idiomatic habit has allowed certain conjectural colloquialisms to creep into his manner of speaking.

■ Hunt argues that the court erred in joining for trial the indictment against him for the storehouse breaking of Weaver's Grocery on December 29, 1970, on which he was acquitted, and the one for the breaking on January 24, 1971, on which he was convicted. RCr 9.12 provides that "The court may order two or more indictments or informations or both to be tried together if the offenses * * * could have been joined in a single indictment or information." In Marcum v. Commonwealth, Ky., 390 S.W.2d 884 (1965), we said:

"It is important, however, that the offenses be of the same or similar character in order that they be properly joined for trial. It is difficult to lay down a rule by which such similarity may be recognized, and the trial court in the exercise of sound discretion should be given broad power in deciding which offenses have similar characteristics."

Hunt's charges were contained in different indictments which arose out of two incidents of storehouse breaking that occurred at Weaver's Grocery less than a month apart and could have been joined in a single indictment. Furthermore, there was sufficient "similarity" to permit them to be properly joined under the rule as interpreted by Marcum. We see no error in their joinder.

RCr 9.16 prohibits a joinder if it appears that prejudice will result. Hunt argues that he suffered prejudice because the stolen merchandise found at Belk's apartment was presented in evidence as proof of the December 1970 breaking. He claims that this evidence proved to be irrelevant with respect to the January 24, 1971, incident. We dealt with the subject of joinder in Russell v. Commonwealth, Ky., 482 S.W.2d 584 (decided June 23, 1972), and mentioned the caution which a trial judge must exercise in determining whether a joint trial should be conducted. Prejudice to the accused must be avoided. At the outset counsel for Hunt attempted unsuccessfully to convince the trial court that there should be no joint trial for the reasons that " * * * they do not grow out of the same act; that they are separated some thirty days in time and charged entirely different break-ins; that the defense for one will be entirely different from the defense of the other and that there is no allegation of conspiracy or continuous act stated in either indictment that will justify their consolidation." At that time the court properly overruled the motion. After it had dismissed the charges pertaining to the December 1970 breaking no motion was made or renewed and no request was then made with respect to joinder to set aside the swearing of the jury. The reasons expressed before the trial were premised on a situation entirely different than that which existed after dismissal of the one charge.

■ In the motion for a new trial the complaint is "Error of the court in consolidating Indictment Nos. 13433, 13434 and 13435 for purposes of trial." At no time was the trial court presented with the argument appellant now makes. "Under our system of appellate review, we may not put the trial judge in error for failure to grant relief which he was never requested to grant." Kentucky & Indiana Terminal Railroad Company v. Martin, Ky., 437 S.W.2d 944 (1969). Furthermore, a

trial court must use the utmost caution in declaring a mistrial on its own motion for fear of creating a situation in which double jeopardy will ensue as occurred in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

The judgment is affirmed.

All concur.