Matthew McINTOSH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

William ROBERTS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

and

Clyde ROBERTS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Feb. 9, 1979.

Rehearing Denied April 13, 1979.

Discretionary Review Denied May 15
and June 26, 1979.

Jack Emory Farley, Public Advocate, Edward C. Monahan, Asst. Public Advocate, Frankfort, for appellant, Matthew McIntosh.

Jack Emory Farley, Public Advocate, M. Gail Robinson, Asst. Public Advocate, Frankfort, for appellant, William Roberts.

Jack Emory Farley, Public Advocate, Linda K. West, Asst. Public Advocate, Frankfort, for appellant, Clyde Roberts.

Robert F. Stephens, Atty. Gen., Reid C. James, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and HOWERTON and LESTER, JJ.

LESTER, Judge.

These three appeals emanate from judgments of conviction which had their inception in a single indictment containing two counts charging each of the appellants with wanton endangerment in the first degree and criminal mischief in the first degree. Different penalties were assessed. Although three separate appeals were taken, the Lee Circuit Court conducted but one trial.

On July 2, 1977, during late afternoon hours, the Lee County Judge/Executive, Douglas Brandenburg, and his father, Dempsey, went to a remote area along the South Fork of the Kentucky River for the purpose of launching their boat in order to check their fishing "setouts". Upon their arrival at the parking area adjacent to the launching site, they stopped the pickup truck in such a way that one of the tires was situated in a depression or "chuckhole". Before leaving the vehicle, Douglas put it in gear and locked the doors with the windows up. A twenty-five caliber pistol was in the glove compartment. Next to the Brandenburg truck was another pickup which, as it later developed, belonged to one of the appellants.

After alighting from the vehicle, the Brandenburgs observed Matthew McIntosh, Clyde Roberts, William Roberts, and Donald Gilbert who had been attempting to repair an outboard motor and, being unable to do so, had gone swimming. Douglas exchanged pleasantries with the group, inquired if he could help them with the motor, and receiving a negative reply, he and his father launched their boat and pulled away from the shore.

The father and son floated a distance of some thirty to fifty feet to the location of the second fish "set-out" when Clyde Roberts fired two shots at them, the first of which missed Douglas' "head approximately a foot or maybe a little farther." He testified, "I did hear the bullet go by." Both of the men clearly identified Clyde as the person who did the shooting since the distance between the boat and appellant was short and the view uninterrupted. On the other hand, neither of the Brandenburgs said that William or Matthew took any part in the shooting portion of the affray.

The next observation made by Douglas and Dempsey was that all three appellants were attempting to push the Brandenburg truck by hand, but due to its weight and the fact that it was parked with one wheel in the depression and in gear, they were unable to move it. At this point, William Roberts used a rock to break out the windshield and the glass on the driver's side and to dent the roof.

Without actually seeing what occurred, Douglas heard something hitting his truck which he thought to be the other pickup. The next action the complainant saw was his truck rolling backwards over the brink of the hill at the edge of the parking area and then descending into the river for a total distance of about forty-five feet where it came to rest upon some tree stump roots, partially submerged with the grill sticking straight up in the air. Before getting out of the boat, Douglas heard "more than one voice" yell, "Judge, you God damn son-of-a-bitch, come on up here, we want to kill you." No identification of the voices was made. The appellants were seen leaving in their truck. Repairs amounted to $1,494.77.

Dempsey Brandenburg identified William Roberts as the one who drove one truck into

his son's pickup in an effort to push the latter vehicle into the river.

McIntosh was arrested on the evening of the incident, while Clyde and William Roberts were apprehended at a later date in Middletown, Ohio, where they said they had gone to seek employment.

Appellants' version of the incident parallels that of the Brandenburgs to the point where the latter pushed off from shore. The defendants below claimed none of them could have fired shots because they did not have a gun and that what the two men in the boat heard was Clyde slapping the water with a paddle. They denied any participation in the damage to or moving of the truck and content themselves with testifying that while they were below the parking area on the shore of the river, they heard an unseen car drive to the immediate area, and a short time later they saw the truck rolling over the bluff. At that point, they decided to leave hurriedly because, since the Brandenburgs had known them to be present, they thought they would get the blame. Moreover, they had been drinking and they feared that they would be charged with some alcoholic beverage offense.

## THE INDICTMENTS

After generally reciting the provisions of the wanton endangerment (first degree) and criminal mischief (first degree) statutes, each count contained the following:

 . . . and each of said defendants, aided, abetted and assisted each other in so doing against the peace and dignity of the Commonwealth of Kentucky.

There was no separate count or indictment charging complicity, (KRS 502.020).

## THE INSTRUCTIONS

An instruction on wanton endangerment in the first degree *only* was given which included reasonable doubt and the definition of "wantonly" and of "serious physical injury." The criminal mischief in the first degree instruction recited the language of the statute and also contained a paragraph on reasonable doubt. On the first count, the jury fixed the punishment for McIntosh

and William at one year and Clyde at five years. On the second count, each appellant was assessed three years and the judgment ordered all terms to be served consecutively.

No complicity instruction was given.

■■■ As to the appellants, William Roberts and Matthew McIntosh, there is not one shred of evidence that they participated in the wanton endangerment of one or either of the Brandenburgs; there is not one scintilla of testimony or circumstantial evidence reflecting a prearrangement, mutual understandings, concert of action, overt act, or an encouragement by expression, advocacy or sympathy by them of Clyde's act; there was no instruction given as to any type of complicity on their parts; and, in general, the record is completely void as to any participation by them in the shooting. The appellee would have us sustain their convictions upon this charge because their conduct constitutes a "wanton encouragement of Clyde Roberts' actions", but it presented nothing to the trial court to support its contention. The Commonwealth urges us to view the evidence as a whole, *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), and find a single concerted effort on the part of all three, while conceding that we are dealing with two separate offenses. Without finding proof of one or more of the elements hereinbefore set out (as found in *Warfield v. Commonwealth*, Ky., 334 S.W.2d 913, 914 (1960)), we must adhere to the rule of *Moore v. Commonwealth*, Ky., 282 S.W.2d 613 (1955), and *Rose v. Commonwealth*, Ky., 385 S.W.2d 202 (1964), to the effect that absent a showing of other facts and circumstances connecting a defendant with the affray, the mere presence at the scene of a crime is not sufficient to attach guilt to the accused. As indicated before, there being no instruction as to complicity, the jury is prohibited from considering that aspect regarding the wanton endangerment charge. The record contains no evidence which would bring this aspect of the appeal within the exceptions delineated in *Hunt v. Commonwealth*, Ky., 483

S.W.2d 128 (1972). The motion for a directed verdict of acquittal should have been granted as to appellants William Roberts and Matthew McIntosh. The judgment convicting Roberts and McIntosh of wanton endangerment is reversed. A new trial of these appellants on this charge is precluded by the double jeopardy clause. *U. S. v. Burks*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

 Clyde Roberts raises no question as to the sufficiency of the evidence on the wanton endangerment charge, but does contend that he was entitled to an instruction on second degree wanton endangerment. The higher degree (KRS 508.060) envisions the offense committed where "under circumstances manifesting extreme indifference to the value of human life" the actor "wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." On the other hand, second degree requires only the creation of a "substantial danger of physical injury." For the purposes pertinent hereto, KRS 500.080(13) defines physical injury as meaning substantial physical pain or any impairment of physical condition. The evidence placed the Brandenburgs in a boat only thirty to thirty-five feet distant from Clyde when he fired what was thought to be a .38 caliber weapon at them, with one projectile missing Douglas' head by only twelve to eighteen inches. These facts, coupled with the threat that someone wanted to kill the judge, would allow no other conclusion than that Clyde wantonly engaged in conduct which created a substantial risk of death or serious physical injury. When the defendant fired the weapon at the relatively short distance, not once but twice, it is difficult to conceive any other circumstance than an "extreme indifference to the value of human life."

Clyde urges that *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75 (1977), and *Martin v. Commonwealth*, Ky., 571 S.W.2d 613 (1978), support his position. We disagree. In *Luttrell, supra*, there was evidence from which a reasonable juror might infer that the actor fired the weapon not for the purpose of killing the police officer, but only to inflict an injury thus permitting an escape. In *Martin*, there was evidence to support the story that the appellant entered and remained unlawfully in a dwelling house without intent to commit a crime therein (at night). From the testimony in the appeal at bar, there is no evidence that Clyde had any intention in firing at the boat other than to inflict serious physical injury or to bring about a death.

*Martin* stands for the principle that,

[i]t is always the duty of a trial court to instruct a jury on lesser included offenses when it is so requested *and it is justified by the evidence*. (Emphasis added). *Id.* at 615.

There was no such justification by the evidence in the present instance, and therefore, *Trimble v. Commonwealth*, Ky., 447 S.W.2d 348 (1969), and *Isaacs v. Commonwealth*, Ky., 553 S.W.2d 843 (1977), are inapplicable.

 The offenses charged in the indictment were committed July 2, 1977, with the trial date being set for November 15th. Upon motion of defendants, the case was continued until November 23, 1977, upon which date the defense presented a petition for change of venue supported by two affidavits. In order to remove a trial from the county in which an offense has occurred, the provisions of KRS 452.220(2) govern and compliance therewith is mandatory. *Caine v. Commonwealth*, Ky., 491 S.W.2d 824 (1973). Among other requirements, it is necessary that the affidavits must state that the affiants are of no kin to the defendants and that they are acquainted with the state of public opinion in the county; further, reasonable written notice must be given to the Commonwealth Attorney. The record herein does not reveal whether one of the affiants, Wanda McIntosh, was related to the appellant of the same surname, but in any event, both of the sworn documents say that the complaining witness was the Lee County Judge, that he had recently been overwhelmingly reelected as such and

[i]t is probable that any jury panel drawn from Lee County would tend to believe

the testimony of the County Judge and witnesses on his behalf simply becouse (sic) of his position to the detriment of defendants, irrespective of the truth.

We believe that the affidavits fell short of complying with the requisite that those executing them be acquainted with the state of public opinion in the county. It is not uncommon that if a panel of veniremen is exhausted that other potential panel members be called. When it appears that one list of names drawn for jury duty may be insufficient it does not in and of itself reflect the state of public opinion in the entire county.

■ The most blatant error on appellants' part is that the petition showed no prior notice of the application to the prosecutor, and that it was filed on the opening day of trial. Since far in excess of four months expired between the offense and the trial, we deem the filing to be unreasonable and it was properly overruled. *Bryant v. Commonwealth*, Ky., 467 S.W.2d 351 (1971).

■ As stated above, the trial commenced on November 23, 1977, and at the close of that day, was recessed until November 28th. On the 23rd, defense counsel moved for a continuance because he had just learned the whereabouts of Donald Gilbert, who was the fourth member of appellants' group at the scene of the affray on the previous July 2nd. A subpoena was issued on the 23rd in order that the defense could use Gilbert as a witness, but since no affidavit was submitted showing what facts it was believed the witness would prove, the motion was properly overruled at the time. RCr 9.04. The same motion was made again on the morning of the 28th and again no affidavit was filed and the court denied the continuance. There was no error or abuse of discretion. RCr 9.04. It should be noted that the defendants had neither made any effort to find and interview Gilbert between early July and the trial nor had they even checked the clerk's office for a return on their subpoena at the time they asked for a continuance on the second occasion. As to the duty imposed upon the

defense in a situation involving an absent witness, see *Cornwell v. Commonwealth*, Ky., 523 S.W.2d 224 (1975).

■ After both litigants had announced that their respective cases were closed, the appellants presented a handwritten affidavit, signed by Clyde Roberts, purporting to contain what Gilbert would testify to if present. The contents of the affidavit do not vary, add to, or delete from what had already been testified to by the appellants. After a motion was made to read the document to the jury, the Commonwealth objected and the motion was denied. Appellee argues that since the affidavit was merely cumulative that, if any error there might have been, it was harmless. Matthew McIntosh contends that since he and his codefendants were the only other witnesses who testified to the facts set out in the affidavit, then Gilbert's testimony was not cumulative, citing *Smith v. Commonwealth*, 301 Ky. 364, 192 S.W.2d 92, 93 (1946). Let us examine that authority.

In February, 1945, a murder charge against Tipton Smith was called for trial. His coindictee, Liza Cotton, was to have a separate trial. The defendant announced ready for trial, but the Commonwealth was granted a continuance. One of the witnesses for the defense, M. C. Smith, was present and recognized to appear at the May term of court, but he was drafted into the army in March, 1945. The defendant was unaware of the induction and unable to determine the location of his witness. Tipton Smith moved for a continuance or for permission to read the affidavit to the jury as to what would be the testimony of M. C. Smith. Both were denied and upon appeal, the conviction was reversed. In its opinion, the *Smith* court said:

In brief of Commonwealth it is claimed that the evidence of the absent Smith would have been merely cumulative. That position is not well taken in view of the fact that the only other defense witnesses who testified about the same facts as set out in the affidavit, were the de-

fendant and Liza Cotton, who were under joint indictment. 192 S.W.2d at 93.

However, the court went on to say:

> At a time when boys were being inducted into the Army by rapidly successive calls, to impose upon the defendant the duty of watching the calls of the draft board and the use of other means and methods to ascertain the time of call would be an unjustifiable requirement. The least that should have been done with this disabled veteran would have been to admit the affidavit subject to competency, and if the Commonwealth then elected to go to trial, thereafter to permit the reading of the affidavit. 192 S.W.2d 93–94.

Thus, we note that the court recognized the unjustifiable duty that would have been imposed upon the defendant in *Smith*, as well as suggesting a proper method for getting the affidavit to the jury. If we were to apply the rationale of *Smith* to the different facts in the case at bar, we would be overlooking the mandate of RCr 9.04 that an affidavit be furnished at the time of the motion for a continuance, as well as the duties imposed upon a defendant as are required by *Cornwell, supra.* In *Smith*, at least there was an affidavit available to admit, subject to competency, which would have permitted the Commonwealth to make its election as to whether to go to trial or not. In this case, there was no affidavit furnished until the close of all the evidence.

In *Smith*, there was a circumstance over which the appellant had no control, namely, the draft, and the inability to locate his witness. In this case, the appellants were fully aware that Gilbert was with them on July 2, 1977, and from that time until November 23, 1977, there is nothing in the record to indicate that any effort was made to find him. On the evening of November 22, 1977, appellants learned that their witness was in Grant County, Kentucky, and between that date and when they presented their evidence (Nov. 28th), no effort was made to communicate with him or for that matter to learn the result of their effort to subpoena him. We do not believe that *Smith, supra,* governs this appeal and we

see no abuse of discretion in refusing the reading of the affidavit to the jury. If any, the error was harmless.

Without elaborating, the affidavit process, because it applies only to a defendant, might be constitutionally suspect for want of equal protection and reciprocal due process of law, for if the prosecution stipulates the contents of an affidavit, it must forego its procedural right of cross-examination. Cf. *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).

■ Appellants, McIntosh and William Roberts, claim a denial of due process in that the court limited their questions upon voir dire examination of the potential jury. Some fifty-three veniremen were called and the defendants struck seventeen out of the possible eighteen allotted to them. Voir dire examination consumed eighty-five pages of transcript, which was seven more than necessary for the actual testimony.

Defense counsel sought to ask certain questions of particular jurors and the court imposed limitations, but since those particular panel members were excused by either the court, the prosecution, or the defense, we see no error on this issue. Complaint is further made that some general questions were refused, but in each instance, the court found fault not with the content but with the form of inquiry. In each instance, the court explained the interrogatory and rephrased it and no objections were made.

■ Appellants argue that wide latitude should be given in the examination of potential jurors, but a review of the transcript fails to demonstrate that any greater latitude could be extended by the court. It should be remembered that in this jurisdiction the examination of the panel by the attorneys is a privilege and not a right, RCr 9.38, and when counsel are permitted to conduct their own examinations, they may be restricted by the court, *Woodford v. Commonwealth,* Ky., 376 S.W.2d 526 (1964). It has long been the rule that the trial judge has broad discretionary power in ascertaining the fitness of jurors. *Williams v. Commonwealth,* 254 Ky. 647, 72 S.W. 31 (1934). There was no abuse in this cause.

Appellants McIntosh and William Roberts urge reversal because of ineffective assistance of counsel in that the three defendants had retained two lawyers to conduct their defense, possibly resulting in conflicts. We deem it unnecessary to resolve this with relation to the charge of wanton endangerment in view of our conclusion that the judgments of conviction must be reversed as to these appellants.

By way of brief, the defendants below argue that there was also doubt about whether they were the ones who interfered with the truck. Other than a temporary misidentification occasioned by not knowing the correct first names of the parties upon the part of one witness, there never was any doubt that all three of the appellants participated in the malicious mischief. Their sole defense was that they didn't do it, and since they could all be observed in the commission of the act, we perceive no actual or potential conflict of interests.

Regarding what separate attorneys could or could not have argued at the sentencing state of the proceedings, we have no comment, for there was no transcript of those procedures and we are unprepared to say counsel were ineffective when we have no knowledge of what transpired. This point is too conjectural.

As a general rule, adequacy of counsel is not reviewable on direct appeal, *Bishop v. Commonwealth*, Ky., 549 S.W.2d 519 (1977), and any errors in that regard must be preserved at the trial level before an appellate court may deal with the subject (which was not done in the instant case). We have made some general comments upon the subject in order to avoid further judicial proceedings.

The last assignment of error is prosecutorial misconduct, based upon four instances during either cross-examination or summation. One alleged erroneous remark was made during final argument to which no objection was made and we are precluded from review. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977). An-

other complaint revolves around the prosecutor's questioning about the .25 caliber pistol missing from the Brandenburg truck, implying that one or more of the appellants had taken it. Even though the Commonwealth made it clear that no one was charged for such a theft there is no prohibition against introducing evidence tending to prove the crime charged in spite of the fact that the testimony may also show the commission of another offense. *Panky v. Commonwealth*, Ky., 485 S.W.2d 513 (1972).

We have reviewed the two remaining points in the testimony and the argument and find no merit in appellants' contentions, for there is no evident prejudice to their cases.

The judgments of conviction of Matthew McIntosh and William Roberts for wanton endangerment in the first degree are reversed, and in all other respects the judgments are affirmed.

All concur.