**Charles Lee BISHOP, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 18, 1977.

Discretionary Review Denied May 17, 1977.

Robert F. Stephens, Atty. Gen., B. F. Radmacher, III, Asst. Atty. Gen., Frankfort, for appellee.

Jack Emory Farley, Public Defender, Gary E. Johnson, Asst. Public Defender, Frankfort, for appellant.

Before PARK, VANCE and WILHOIT, JJ.

PARK, Judge.

The appellant, Charles Lee Bishop, appeals from a judgment of conviction of robbery in the first degree (KRS 515.020) and kidnapping (KRS 509.040). Bishop was tried and convicted by a jury which fixed the maximum term of imprisonment at ten years on each charge. The Fulton Circuit Court imposed a sentence of imprisonment for each offense and directed that the sentences were to be served consecutively.

Both charges against Bishop arise out of the robbery of Cecil's IGA Supermarket near the City of Fulton on the evening of October 29, 1975, shortly before closing time. On the trial of the case, the main issue was one of identification. Bishop denied that he was the person who committed the robbery, and he offered alibi witnesses. On appeal, essentially two issues are raised. The first relates to the charge of robbery in the first degree; the second, to the kidnapping charge.

Bishop was indicted and convicted of robbery in the first degree rather than robbery in the second degree on the theory that he was "armed with a deadly weapon" during the commission of the robbery. KRS 515.-020(1)(b). Under KRS 500.080(4), a "deadly weapon" is defined as "any weapon from which a shot, readily capable of producing death or other serious physical injury, may

be discharged". The employees of the supermarket testified that the robber was armed with a sawed off shotgun.

The shotgun used in the robbery was never introduced into evidence. In the appellant's brief, it is argued that there is no proof that the robbery weapon was capable of firing a shot as required by the statutory definition of a deadly weapon. The appellant claims that a directed verdict should have been granted, or that an instruction should have been given submitting to the jury the issue whether the sawed off shotgun was a deadly weapon.

■ The instruction given by the circuit court was taken directly from 1 Palmore and Lawson, *Instructions to Juries in Kentucky*, § 4.21 (1975). This instruction required the jury to believe beyond a reasonable doubt that Bishop used a shotgun in the course of the robbery, but the instruction did not submit to the jury the issue whether the shotgun in question was in working order. There was no testimony indicating that the sawed off shotgun used in the robbery was not in working order. In fact, the assailant told the store manager to open the store's safe or "I will blow your legs off." It is a matter of common knowledge (and common sense) that a sawed off shotgun falls within the definition of a deadly weapon. As has been stated:

"It should never be necessary in the instructions to use or define the words 'deadly weapon,' because the weapon itself will be named. Whether a particular instrument is or is not a 'deadly weapon' should be determined by the court as a matter of law." 1 Palmore and Lawson, *Instructions to Juries in Kentucky*, § 2.11, pp. 56–57.

The circuit court did not err in its instructions on the charge of robbery in the first degree and did not err in refusing to direct a verdict for Bishop on this issue.

■ There was no evidence that the sawed off shotgun used in the robbery was not capable of firing a shot. However, even if for some reason the sawed off shotgun had been inoperable, it would not auto-

matically cease to be a deadly weapon. The person using the sawed off shotgun in this robbery clearly intended to convince the store employees that it was capable of causing death or other serious physical injury, and the store employees were in fact so convinced. Under those circumstances, the sawed off shotgun would be a deadly weapon even if it were inoperable. *Merritt v. Commonwealth*, Ky., 386 S.W.2d 727 (1965); *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1976).

■ The second issue raised on appeal relates to the kidnapping charge. This issue is raised in a rather oblique fashion. Although conceding that the trial counsel conducted a skillful defense on the issues of identification and alibi, Bishop's counsel on appeal asserts that Bishop was denied effective assistance of counsel during the trial. This alleged incompetency of trial counsel is related to two matters. First, it is argued that trial counsel should have raised the issue whether the sawed off shotgun was a deadly weapon. In light of our disposition of that issue, the contention has no merit. Second, it is claimed that trial counsel failed to raise a statutory defense to the kidnapping charge thereby demonstrating trial counsel's ignorance of the law.

Bishop's counsel on appeal relies on KRS 509.050 which provides:

"A person may not be convicted of * * kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose."

Bishop was convicted of kidnapping Ricky Elliot, a clerk in the supermarket. Bishop's counsel on appeal claims that any restraint of Elliot was merely incidental to the robbery and would not constitute the offense of kidnapping under the exemption provided by KRS 509.050.

After the store manager was compelled to open the safe, Elliot was required to fill a sack with the contents of the safe. Instead of taking the sack from Elliot, the robber forced Elliot to precede him out of the supermarket at gun point. Elliot testified as follows:

"A After filling the bag, I approached him with the bag, I expected him to want it, but he told me to keep it and told me that I was to go with him, and we proceed out the front door, and he asked me where my car was parked, and I told him it was down toward the Walmart Store, and then he asked whose car this was parked directly in front of us which was in front of the store, and I told him it was one of the employees. We then went back into the store and asked for that employee to apparently use his car. We then on discovering that the employee was not there we went back outside and down in front of the building and as we got to the corner of the building he instructed me to walk toward the . . . run toward the fire. From there we ran toward the woods . . .

Q Now where was this fire?

A To me in the corner it was toward the town of Fulton. It was what you would call it kind of to the back of the store but not exactly more or less at a forty five degree angle from the corner of the store there.

Q Now what did you see?

A Well, you could see a bright glow and a lot of smoke . . . and we ran to, to the edge of the woods and there at the woods he took the money from me and told me to go into the woods and wait and he went, I suspect from what I heard that he went on into the woods himself in another direction, and after a small . . .

Q Alright, and when you reached a point some distance from the store then he left you and went into the woods?

A He took the money bag from me and told me to go in that direction into the woods and he went another.

Q  You went in another direction?

A  Another direction into the woods.

Q  Now did you go into the woods?

A  Yes, sir.  I did.

Q  How far did you go into these?

A  Maybe fifty feet, wasn't very far.

Q  Did you ever leave what is generally called Walmart property?

A  (Silence)

Q  You know it is concreted back to a certain distance, but you know where the Walmart excavation took place when they were building that.  There was still part of the excavation there?

A  No, we were into the trees."

In its instructions, the circuit court required the jury to believe beyond a reasonable doubt that Bishop used Elliot as a "shield or hostage" to advance the commission of the robbery and that Elliot was restrained "in the field to the rear of Cecil's IGA."  Under these instructions, Bishop would not have been guilty of kidnapping when he forced Elliot to accompany him from the store the first time in search of an automobile.  Under the instructions, a kidnapping could occur only when Bishop forced Elliot to accompany him a second time from the store to the wooded field in the rear of the supermarket.  By its verdict, the jury clearly found that Bishop used Elliot as a shield or hostage by forcing him to the wooded field at the rear of the store.

■  The offense of kidnapping defined by KRS 509.040 was intended to apply to those restraints of a person's liberty which involve "great risk of death or serious bodily injury."  See the Commentary, Kentucky Penal Code, Final Draft, p. 118 (1971).  The offense of robbery in the first degree necessarily involves a risk of death or serious bodily injury to the victim inasmuch as there is a threat of the immediate use of physical force upon another person by an assailant who is armed with a deadly weapon.  As the Commentary to KRS 509.050 states:

"Before criminal behavior that is directed toward the completion of robbery, rape, or some other offense can constitute kidnapping, there must be an interference with liberty in excess of that which ordinarily accompanies that offense."  *Id.*, at p. 120.

The exemption from the kidnapping statute provided by KRS 509.050 is similar to the rule applied by the California Supreme Court in People v. Daniels, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677 (1969).  The California court held that the legislature intended to exclude from the offense of kidnapping not only "standstill" robberies, but also those in which the movements of the victim "are merely incidental to commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself."  *Id.* 71 Cal.2d at 1139, 80 Cal.Rptr. at 910, 459 P.2d at 238, 43 A.L.R.3d at 695.  In a later California case, a robbery conviction was sustained when two girls were stopped around midnight by the defendant on a well lighted public street and forced into a nearby dimly lighted alley where the robbery was carried out.  The court pointed out that the risk of harm to the two girls was much greater in the darkened alley than it was on the lighted public street.  *People v. Thomas*, 3 Cal. App.3d 859, 83 Cal.Rptr. 879 (1970).

In the present case, Elliot was singled out from the other store employees and forced to leave the relative safety of the well lighted supermarket.  The jury found that Bishop intended to use Elliot as a hostage or shield.  Elliot was forced at gunpoint to the darkness of the wooded field behind the store and beyond the parking lot.  With a sawed off shotgun to his head, Elliot was subject to Bishop's unfettered control.  When Elliot was taken an appreciable distance from his lighted place of employment to the darkness of the field behind the store, he was exposed to a much greater risk of death or serious bodily injury, and the interference with his liberty was far in excess of that which ordinarily accompanies a robbery in the first degree.

■  All of the foregoing discussion relates to the question whether trial counsel was incompetent.  This court has no hesi-

tancy in holding that Bishop was not denied the effective assistance of counsel during the trial of his case. The efforts of Bishop's trial counsel were not such as to shock the conscience of the court or to render the proceedings a farce and a mockery of justice. *Lay v. Commonwealth*, Ky., 506 S.W.2d 507 (1974). We affirmatively hold that Bishop did receive reasonably effective assistance of counsel in accordance with the tests set forth in *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974), and *Boyd v. Cowan*, 494 F.2d 338 (6th Cir. 1974). In so holding, it is not the intention of this court to adopt the *Beasley* rule. See *Perkins v. Commonwealth*, Ky., 516 S.W.2d 873, 874, n. 1 (1974). This court finds no error of judgment on the part of the trial counsel which could have affected the verdict in this case.

This court is cognizant of the general rule that adequacy of counsel is not reviewable on direct appeal. *Caslin v. Commonwealth*, Ky., 491 S.W.2d 832 (1973). However, in fairness to trial counsel and in order to avoid the necessity for further judicial proceedings, this court has decided to face that issue. Based upon a review of the transcript of the evidence, this court concludes that the trial counsel insured that Bishop had a fair trial.

Judgment of the circuit court is affirmed.

All concur.