Joseph Sylvester HIBBS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

March 3, 1978.

Rehearing Denied April 14, 1978.

Discretionary Review Denied Oct. 3, 1978.

Terrance R. Fitzgerald, Deputy Dist. Defender, Frank W. Heft, Jr., Asst. Dist. Defender, C. David Johnstone, Chief Trial Atty., Louisville, for appellant.

Robert F. Stephens, Atty. Gen., David M. Whalin, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, VANCE and WHITE, JJ.

HAYES, Judge.

 This case is before us on a direct appeal from the judgment of the Jefferson Circuit Court by which appellant, Joseph Sylvester Hibbs, was sentenced to the penitentiary for ten (10) years for violation of KRS 515.020 (Robbery I) and from an order overruling his RCr 11.42 motion on the same subject matter. We have consolidated these appeals in this case only and do not recommend it is appropriate that the defendant in a criminal case be permitted to have two (2) appeals at the same time on the same case. The reason it is permitted here is because there is only one issue propounded by the appellant in the RCr 11.42 appeal, ineffective assistance of counsel, which is the same issue involved on the direct appeal. Generally, this issue is the subject of an RCr 11.42 motion and not one on a direct appeal. We believe, however, the defendant-appellant properly preserved this issue for review on direct appeal when he included it in his grounds for a motion for new trial. It would appear then that the RCr 11.42 procedure was unnecessary.

On the night of July 31, 1976, in Jefferson County, Kentucky, the Convenient Food Mart Store was robbed by two (2) white males. One carried a .38 calibre revolver. This unknown individual demanded the store's receipts and when the lady cashier did not respond to suit the robber, he fired a shot into the floor, which bullet ricocheted off the floor into the ceiling. Upon hearing a shot, the night manager came from the back of the store and was confronted by the two (2) robbers. Both employees of the grocery store noticed one of the robbers, the unarmed one, was shirtless and bare from the waist up. The cashier said this individual had obviously been drinking; the night manager testified he was drunk. Both employees were positive about his description and the fact he had tattoos on both arms and across his chest. They later identified the defendant, Hibbs, from a packet of mug shots produced for their viewing by the police department.

Hibbs was eventually arrested by the police at the Jefferson County Jail where he was serving time on a public intoxication charge. He voluntarily permitted the police to take a photograph of his bare upper torso. This photograph reveals a large tattoo of a nude woman on Hibbs's right fore-

arm, a small tattoo of a nude woman on his left forearm; a large design of a wolf's head with a question mark over it in the center of his chest, and the words *crime doctor* in large letters appearing over the wolf's head. On either side of the words *crime doctor* was the design of a bird in flight. Appearing in the webbing between Hibbs's right thumb and forefinger was the numeral 13. This photograph was introduced at the trial.

The two store employees testified positively that Hibbs was one of the robbers. Four (4) character witnesses testified for Hibbs, who also testified.

The above facts have been set forth in more detail than usual in order to indicate what Hibbs's counsel was faced with at trial. Hibbs is complaining of ineffective assistance of counsel on three (3) grounds.

First, he states counsel, who was appointed, and who was not a public defender, was not properly prepared. Second, Hibbs states the attorney made prejudicial statements during the trial within hearing of the jury about Hibbs's past criminal record, and, thirdly, counsel failed to secure a transcript of a previously held probable cause hearing in Jefferson Quarterly Court.

■ The record indicates that defense counsel talked to Hibbs on at least two (2) occasions before trial, and he produced the four character witnesses Hibbs told him about. A careful reading of the record further reveals that defense counsel's strategy, in view of the rather substantial evidence against him, was to picture the defendant Hibbs as an alcoholic who was merely along for the ride and who was so inebriated he didn't know what he was doing or where he was. Although some other attorney might not have used this approach, we have said in *Ramsey v. Commonwealth*, Ky., 399 S.W.2d 473 (1966) that effective assistance of counsel does not guarantee error free representation, nor does it deny to counsel freedom of discretion in determining the means of presenting his client's case. See also *Meadows v. Commonwealth*, Ky., 550 S.W.2d 511 (1977). Trial counsel has been a practicing attorney for twenty-

seven (27) years and eleven and one half (11½) of those have been in the criminal practice field. Hibbs received the minimum sentence. Apparently trial counsel made his point to the jury. We choose not to retry the case and second guess the trial counsel as to what he should have or should not have done at the time. *Dorton v. Commonwealth*, Ky., 433 S.W.2d 117 (1968).

■ Trial counsel did state in his opening statement to the jury that Hibbs had been convicted of auto theft in 1952 or 1953 and went to the penitentiary. From the record it is apparent Hibbs told his trial counsel he had been in no trouble with the law since then. Trial counsel was obviously aware that once he placed in evidence the defendant's good character through the witnesses Hibbs asked trial counsel to produce, then the Commonwealth could go into his complete arrest record for impeachment purposes, *Pruitt v. Commonwealth*, Ky., 487 S.W.2d 940 (1972). Trial counsel stated he was attempting to prove to the jury that Hibbs had not had any criminal problem for twenty-five (25) years and was rehabilitated. This apparently was in furtherance of trial counsel's efforts to obtain the minimum sentence. This he accomplished. The defendant's previous arrest record was going to be introduced anyway by the Commonwealth, once the character witnesses took the stand. We point out here that Hibbs apparently lied to his trial counsel, for once the character witnesses testified, the Commonwealth introduced evidence of other crimes which Hibbs plead guilty to in 1974. We fail to see where Hibbs was prejudiced from this strategy by trial counsel.

Thirdly, no place in the record of this case can we find where Hibbs ever requested a transcript of the Quarterly Court proceedings until after the trial was concluded and the attorneys were preparing to give their closing statements. There was no indication that a transcript was even available. Nevertheless, trial counsel effectively argued to the jury during closing arguments that Hibbs wanted a transcript of the Quarterly Court proceedings because the wit-

nesses for the Commonwealth testified differently at that hearing. This was improper; however, the defendant Hibbs can't complain.

■ We are not prepared to hold, when reviewing the entire record, and, since Hibbs received the minimum sentence, that trial counsel's conduct in this case "shocks the conscience" or renders the proceedings a farce and mockery of justice, *Bishop v. Commonwealth*, Ky., 549 S.W.2d 519 (1977).

■ The Commonwealth has conceded that this case must be remanded for failure of the trial court to follow the mandates of KRS 532.050 and KRS 533.010. We agree.

We feel that it is necessary and appropriate to comment upon accusations concerning the private bar in the brief by the Public Defender's Office of Jefferson County, which office was appointed to prosecute these appeals for Hibbs. We quote from page 6 of that brief:

> The record before this court highlights dramatically the undesirability of appointing volunteer counsel instead of the public defender to represent indigent criminal defendants. All too frequently, volunteer counsel is preoccupied with the prospect of squeezing a fee or expenses out of relatives who are either unwilling or unable to make any financial contribution to the defense. If no money is generated within a reasonable time, volunteer counsel may be permitted to withdraw in favor of the public defender. Alternatively, as in the case at bar, volunteer counsel may choose to remain on the case without fee or expenses. In either event, the appointment of unfunded volunteer counsel has a marked tendency to disrupt the continuity of defense efforts, to postpone and thus dilute the independent investigation of the case, to foster scant and haphazard trial preparation, and to produce bizarre and ill-considered defenses at trial.

We believe the public defender's above statements are not only unwarranted and unprofessional but are also untrue.

The judgment of the trial court is affirmed on the direct appeal and on the RCr 11.42 proceedings. The case is remanded for the trial court to comply with KRS 532.050 and KRS 533.010.

ALL CONCUR.