William Earl MARTIN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

George T. CHENAULT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

May 2, 1978.

Rehearing Denied July 3, 1978.

Terrence R. Fitzgerald, Deputy Dist. Defender, Louisville, for appellant William Earl Martin.

Daniel T. Goyette, Associate Director, Terrence R. Fitzgerald, Deputy Public Defender, Louisville, for appellant George T. Chenault.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

William Earl Martin and George T. Chenault were each indicted on a charge of first-degree burglary. KRS 511.020. A second count of the indictment charged Chenault as a persistent felony offender. KRS 532.080. The jury returned verdicts finding both of them guilty of first-degree burglary. It fixed Martin's punishment at 20 years' imprisonment, and Chenault's sentence at 10 years' imprisonment. On a second stage of a bifurcated proceeding on the persistent felony offense the jury found Chenault guilty and his sentence was enhanced to a term of 25 years' imprisonment. Judgment was entered accordingly. Martin and Chenault were not satisfied with the result and each of them prosecutes a separate appeal from the convictions. The appeals have been consolidated and are considered together.

There are two questions in these consolidated cases that merit this court's consideration. The first is whether Martin and Chenault were entitled to an instruction on criminal trespass. The second is whether

the evidence was sufficient to support Chenault's conviction as a persistent felony offender in the first degree.

Willa Mary O'Neal was visiting her mother on the evening of March 6, 1977. Between 11:00 and 11:30 P.M. her mother received a phone call from someone, whose identity was not established, that Willa's home was being broken into. Willa called the police, and then accompanied by her father, returned to her home. The police were there when Willa and her father arrived. Officers Lampkin and Dossett went to the front of the house and were unable to open the front door although, according to Lampkin's testimony, the lock was "very loose, to where it had been jimmied, or forced." The officers were able to enter the house when Willa arrived with her key.

Another police unit arrived on the scene at the same time Officers Lampkin and Dossett drove up. These two officers, Culver and Hill, were at the rear of Willa's dwelling while the other team was entering the front door. The two officers heard someone coming through the kitchen and observed a black male, walking in a crouched position, come out of the house. Both men identified Chenault as the black man they had seen. Chenault was arrested and taken away by Officer Hill; meanwhile, Officer Culver entered the rear of the house. As he was entering the kitchen, Martin walked into the room, held his hands up, and said, "You got me." Martin was immediately handcuffed and placed under arrest.

Neither burglary tools nor any of Willa's property was found on Martin or Chenault. Officer Culver testified that the house had been "ransacked." Officer Lampkin went through the house but didn't notice the condition of the furnishings because he was watching the two suspects. When asked about Chenault's sobriety, Officer Culver testified that he did not stagger or slur his words and did not smell of alcohol. Culver's testimony was confirmed by Officer Hill. Officer Lampkin testified that Martin was in a very stable condition and therefore did not undergo any sobriety tests. Neither

Martin nor Chenault was arrested at the scene for intoxication although both testified they had been drinking all day. They testified that they passed Willa's house that evening while on the way to a bootlegger. Martin, who lived next door to Willa, testified her door was "broke down, cracked open" and he thought someone had broken into her house. Martin said he and Chenault went in to investigate because he knew Willa was visiting her mother.

Counsel for Martin and Chenault moved for a directed verdict at the close of the Commonwealth's case on the ground that the crime of first-degree burglary had not been proven and the case should be submitted to the jury on criminal trespass. The motion was overruled. The motion was renewed at the close of all the evidence and again denied. Martin and Chenault each tendered an instruction on first-degree criminal trespass which was refused by the trial court. At the second stage of the trial Chenault was tried as a persistent felon. His counsel made a motion for a directed verdict on the ground that all the essential elements of the persistent felony offense were not proven; *i. e.*, it was not shown that Chenault was discharged from probation or parole within five years of his latest felony conviction. An objection was also made to the instructions given by the trial court and the instructions tendered by counsel for Martin and Chenault were placed in the record.

Throughout the trial Martin and Chenault readily admitted that they had entered Willa's home without her permission. However, they both denied they had committed a crime in the dwelling or had intended to do so. There was also an attempt to prove that both were too drunk at the time of the entry to form any culpable intent.

The offense of criminal trespass is a lesser crime which is included in the crime of burglary. Burglary may be committed when someone knowingly enters or remains unlawfully in a dwelling with the intent to commit crime and when such entry occurs at night. KRS 511.020. Criminal trespass

in the first degree is committed when one "knowingly enters or remains unlawfully in a dwelling." KRS 511.060. Certainly there was evidence that would support a conviction of the lesser offense. In *Trimble v. Commonwealth*, Ky., 447 S.W.2d 348 (1969), this court upheld a conviction of rape where the trial court failed to instruct the jury on the offense of detaining a woman against her will with intent to have carnal knowledge of her. The court noted that, "Nothing in the evidence tended to prove any lesser degree of the offense." *Trimble, supra*, at 350. The court stated however:

> "The rationale of the applicable rule seems to be that instruction (sic) should be given covering the whole law of the case as the whole law of the case is determinable from all the evidence. When the prosecution adduces evidence warranting an inference of a finding of a lesser degree of the charged offense; the court should instruct on the lesser degree even though the defendant presents the defense of alibi." *Trimble, supra*, at 350.

The trial court's failure to instruct the jury upon criminal trespass was error. It is always the duty of a trial court to instruct a jury on lesser included offenses when it is so requested and it is justified by the evidence.

The Commonwealth contends that there is no evidence of criminal trespass because both Martin and Chenault denied any "unlawful" intrusion into Willa's home. This argument can be answered in two ways. First, the Martin and Chenault claim that the entry was lawful does not make it so; the jury is entitled to draw its own conclusion as to the nature of the entry from all of the evidence. And second, even if a defense is inconsistent with an instruction, that instruction must be given if it is warranted by the evidence. *Trimble, supra*, cited *Harris v. Commonwealth*, Ky., 389 S.W.2d 907 (1965), where a murder conviction was reversed for failure of the trial court to give an instruction on voluntary manslaughter although the defendant tried to establish an alibi defense. *Harris* is

analogous to this case where an instruction on a lesser included offense was warranted and should have been given.

At the second stage of the trial, Chenault was convicted of being a persistent felony offender in the first degree. His punishment was enhanced from 10 to 25 years. Since the principal offense for which Chenault was convicted occurred on March 6, 1977, the enhanced penalty was rendered under the provisions of KRS 532.080(3) as it stood at that time.[1] The controlling statute provides in part:

> "A persistent felony offender in the first degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of two (2) or more felonies. As used in this provision, a previous felony conviction is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided:
>
> (a) That a sentence to a term or imprisonment of one year or more or a sentence to death was imposed therefore; and
>
> (b) That the offender was over the age of eighteen (18) years at the time the offense was committed and was discharged from probation or parole within five (5) years of the date of commission of the felony for which he was last convicted."

It is contended that there was insufficient evidence to support a conviction under KRS 532.080(3). The proof is specifically attacked in that there is no evidence that Chenault was discharged from supervision, probation, or parole on the 1963 or 1967 convictions. Such proof is mandatory under the persistent felony statute. In *Newton v. Commonwealth*, Ky., 558 S.W.2d 167 (1977), this court reversed a persistent felony conviction under the same version of KRS 532.080(3) as there was no proof that the appellant was discharged from probation or parole for the previous felonies for which he was convicted. In *Newton, supra*, as in this case, there was undisputed proof

---

1. KRS 532.080 was amended in 1976 with the new version effective as of January 2, 1978.

of the two previous felony convictions—which occurred two years before the principal offense—and proof that Newton was 18 years of age at the time of the prior convictions. Nonetheless, the failure of the evidence to show that Newton was discharged from probation or parole for the earlier felonies required reversal. This court stated:

> "We are of the opinion proof of this fact is an essential element of the offense of being a persistent felony offender. The statute is clear, concise, and not ambiguous. Absent proof of an essential element of the offense, the conviction cannot stand." *Newton, supra,* at 168.

The evidence showed that Chenault was born on June 7, 1927, and was twice convicted for storehouse breaking. The offenses took place on January 30, 1963 and August 13, 1967. He received a two-year sentence on each conviction. There was no evidence concerning his discharge from supervision, probation, or parole on either of these charges. It was further shown that on January 18, 1973, Chenault was sentenced to one year for a storehouse breaking which had occurred on September 20, 1972. The evidence reveals that Chenault was released from supervision, probation, or parole on either July 18 or September 18, 1973. Therefore, only the 1973 conviction can qualify as a previous felony conviction under the clear language of KRS 532.080. The evidence was not sufficient to prove that Chenault had been convicted of two prior felonies within the definition of the statute.

The corrections officer testified that she had no records showing that Chenault was released on parole and probation on either the March 7, 1963 conviction, or the November 30, 1967 conviction. Thus, it appears that upon a new trial, if the evidence be the same, Chenault could be convicted only as a second-degree persistent felon because the evidence demonstrates that only the 1973 conviction is within the purview of the persistent felony offender statute. KRS 532.-080(2).

The failure of the trial court to give a criminal trespass instruction, and the failure of proof as to Chenault's persistent felony offense mandate a new trial.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.