**Ed WOMBLES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 91–SC–384–MR.**

Supreme Court of Kentucky.

May 14, 1992.

Kathy L. Hornaday, Owensboro, for appellant.

Chris Gorman, Atty. Gen., Ann Louise Cheuvront, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

Ed Wombles, age fifty-one, was convicted by a Clay County jury on six counts of first-degree rape of his eleven-year-old daughter, Lisa. Wombles received a total sentence of forty years.

Lisa was a fifth-grade student enrolled in special education classes at Manchester Elementary School. A social worker, Vern Webb, testified that he had worked with Lisa in 1990. Webb described Lisa as having a level of intelligence lower than her chronological age, that she was "immature," and that she was incapable of specifically describing events. Webb further stated that Lisa was, however, a friendly and easygoing child.

On March 21 and 22, 1990, Lisa appeared to her teacher to be ill and emotionally upset. A classmate informed the teacher that Lisa was having problems. A school counselor was notified by the teacher, who, in turn, contacted the child welfare authorities.

Susie Adams, a social worker, was assigned to investigate the claims made by Lisa. Lisa, who was in tears and shaking all over, informed Adams that sexual contact with her father took place on four separate days in March, 1990; and that, on two of those days, sexual contact took place twice.

Dr. Larry Nunemaker, a physician specializing in gynecology and obstetrics, was contacted and examined Lisa. At trial, Dr. Nunemaker testified that he found no evidence of any tears, lacerations, or bruising, but that, in all medical probability, there had been repeated episodes of vaginal penetration. The absence of any tears, lacerations, or bruising was consistent with the last penetration being on March 18, 1990. Dr. Nunemaker did not test for the presence of seminal fluid, pubic hair, or venereal disease.

Lisa testified that on March 7, 1990, her dad took her into the bedroom at their house, took their clothes off, put her in bed, and crawled on top of her. He then placed his penis in her and started moving. When Lisa's mother came in and saw them, she asked what was going on. Ed Wombles got up, closed the door, and stated that he was having sex with his daughter. At trial, Lisa further stated that her father had sexual intercourse with her twice on both March 14 and 15, 1990, with the last time occurring on March 18, 1990.

Wombles first argues that the trial court abused its discretion when it ruled that Lisa Wombles, then age twelve when the trial began, was competent to testify.

■ The one-day trial was conducted on March 18, 1991. A competency hearing was requested by defense counsel prior to Lisa's testifying. The trial court conducted an in-chambers interview of Lisa in the presence of counsel to determine her competency to testify. Though Lisa incorrectly stated the date of the year and could not formulate any lengthy statement, the trial judge found that Lisa knew her birthday by number and month, that she knew the day of the week by number of the month and name of the month, that she knew how many siblings she had, and that she knew the difference between the truth and a lie. The trial judge had verified this last finding of fact by showing Lisa a glass of water and telling her it was empty. When asked if this were the truth or a lie, Lisa replied that it was a lie because the glass was half full.

■ KRS 421.200 provides that "every person is competent to testify for himself or another, unless he be found by the court incapable of understanding the facts concerning which his testimony is offered." This presumption of competency includes infants. *See Hardy v. Commonwealth,* Ky., 719 S.W.2d 727 (1986). It is within the sound discretion of the trial court to determine whether a witness is competent to testify. *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549, 551 (1985). "The trial judge is in the unique position to observe witnesses and to determine their competency." *Stincer v. Commonwealth,* Ky., 712 S.W.2d 939 (1986). The standard of competency of a child witness by which the discretion of the trial judge is to be guided is stated in *Capps v. Commonwealth,* Ky., 560 S.W.2d 559, 560 (1977), wherein we stated:

> When the competency of an infant to testify is properly raised it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect and narrate the facts and has a moral sense of obligation to speak the truth. (Citation omitted.)

■ Whether the testimony is true or not goes toward the credibility of the witness, not her competency to testify. *Capps, supra; Travis v. Commonwealth,* Ky., 457 S.W.2d 481 (1970). Moreover, CR 52.01, which is applicable to a trial court's finding of competency, states:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

We have reviewed the record, including the competency hearing and the testimony of Lisa Wombles, and find that the trial court did not abuse its discretion in finding Lisa competent to testify. *Pendleton, supra.* The trial court's findings of fact are not clearly erroneous and, therefore, are conclusive on the issue. CR 52.01; *Stincer, supra.*

■ Wombles next claims that the trial court abused its discretion when it denied

his motion for a directed verdict. At trial, defense counsel tried to prove that Lisa had lied about the rapes so that she would be placed back in a foster home where she would enjoy a better standard of living. To support this theory, the defense called two witnesses to testify.

The first witness, Jim Norris (appellant's first defense counsel), stated that Lisa, accompanied by her mother, sister, and brother, had come to him on July 2, 1990, to recant the story. Norris and Lisa walked to the prosecutor's office but neither the prosecutor nor his assistant was available. Norris claims that he subsequently scheduled an appointment with Lisa to tape-record the statement, but she did not come because she had been taken back into the custody of the Cabinet for Human Resources.

A second witness, Elbert May, testified that Lisa had told him that her father was "messing" with her and "trying" to have intercourse with her. May stated that Lisa told him that she was going to tell social services, regardless of whether the allegation were true or not, so that she could be removed from the house.

The jury rejected appellant's theory of the case and returned a verdict of guilty on all six counts of first-degree rape in less than one hour.

The standard which the trial court follows in determining whether a directed verdict motion should be granted was enunciated first in *Trowell v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), and later in *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983). We modified this standard in *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991), wherein we stated:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

We have reviewed the record and find that the trial court correctly denied Wombles' motion for a directed verdict. The trial court properly submitted the charges of first-degree rape to the jury for their determination. Taking the evidence as a whole, it was not clearly unreasonable for a jury to find Ed Wombles guilty on six counts of first-degree rape. *Benham, supra.*

Moreover, the trial court did not abuse its discretion when it denied the appellant an instruction on incest. The trial court properly instructed the jury on first-degree rape and sexual abuse in the first degree. We acknowledge that the trial court is required to instruct a jury on lesser-included offenses when it is so requested and it is justified by the evidence. *Martin v. Commonwealth*, Ky., 571 S.W.2d 613, 615 (1978). But it has been held that the crime of incest is neither an offense included in rape nor a lower degree of rape because incest includes elements not present in rape. *See* 41 Am.Jur.2d Incest, section 4 (footnote omitted). "Generally, the offenses included in a charge of incest by sexual intercourse are not the same as those included in a charge of forcible rape because the essential elements of incest do not include force, violence, lack of consent, or assault." *Id.* at section 3 (footnote omitted). The Commonwealth, in this case, proved that the appellant forced his eleven-year-old daughter to have intercourse with him without her consent on six separate occasions. Consanguinity between the attacker and the victim is not a necessary element of the crime of rape or statutory rape. KRS 510.040. And the elements of force, consent, or age are not necessary to prove incest. KRS 510.020. Prior to this

state's adoption of the Model Penal Code, we held that incest is not a lesser-included offense of rape. *Breeding v. Commonwealth*, 191 Ky. 128, 229 S.W. 372 (1921); *Burdue v. Commonwealth*, 144 Ky. 428, 138 S.W. 296 (1911). We believe this rule is correct and should continue to be applied. The trial court did not abuse its discretion. No error occurred.

Wombles' final claim of error is also without merit. Wombles claims that the trial court abused its discretion when it sentenced him contrary to the recommendation of the jury. The jury had recommended a twenty-year sentence on each conviction, with the sentences to run concurrently. The trial court imposed a twenty-year sentence on each count and ran counts one, two, and three concurrently with each other but consecutively with counts four, five, and six, for a total sentence of forty years.

The recommended concurrent sentence returned by the jury was no more than a "recommendation," and is not binding upon the trial court at the defendant's final sentencing. KRS 532.110(1). We have held that it is not error for a trial judge to run sentences consecutively even though the jury has recommended concurrent sentences. *Dotson v. Commonwealth*, Ky., 740 S.W.2d 930 (1987). This is subject, of course, to the trial court's not imposing an illegal sentence. *Smith v. Commonwealth*, Ky., 806 S.W.2d 647 (1991). Here, the trial court did not abuse its discretion and there was no error.

The judgment of conviction and the sentence of the Clay Circuit Court are affirmed.

STEPHENS, C.J., and COMBS, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., concurs in part and dissents in part by separate opinion.

**LEIBSON, Justice, concurring in part/dissenting in part.**

I concur in the Majority Opinion on the guilt phase of this case.

Respectfully, I dissent as to the penalty phase because the Court has approved consecutive sentencing where the jury decided concurrent sentences were appropriate. Thus the sentence provided by the jury has been effectively doubled from 20 to 40 years. My reasons for dissenting are the same as stated in my Dissenting Opinion in *Dotson v. Commonwealth*, Ky., 740 S.W.2d 930, 932–34 (1987).