RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0145-MR

ANDRE MORRIS                                                                APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 17-CR-002628


COMMONWEALTH OF KENTUCKY                                              APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND KRAMER, JUDGES.

CALDWELL, JUDGE:  Appellant Andre Morris ("Morris") appeals as a matter of right from his conviction on one count of assault in the fourth degree and his resultant six-year sentence of imprisonment.  We hold that the trial court committed errors which implicated the fundamental fairness of the trial and reverse and remand this matter back to the Jefferson Circuit Court.

# FACTS

Morris had recently moved back to his native Louisville from Atlanta, where he had moved as a young person. He had been dating a woman named Tracy. In August of 2017, Tracy asked him to spend the night at her apartment because she had a job interview the next morning and needed him to give her a ride to the interview. He did so, and after her interview Morris took her back to the apartment and left for work.

After work, Morris returned to Tracy's apartment. He had stopped by the bank earlier to cash his paycheck and had quite a bit of cash in his pocket. He knocked on the door, but there was no answer, and there was no vehicle in the driveway. Looking through the window in her front door, he saw a man in her apartment. Though Morris did not know the man, his name was Brian Simmons ("Simmons"). Morris tried to call Tracy, but she did not answer.

Morris went to his car, parked outside her apartment, and planned on waiting, thinking Tracy must not be home. While waiting he saw a man named Roger Little ("Little"), with whom he had previously had an altercation, walking toward the apartment building. At their prior and only meeting, Little had been threatening toward Morris and Tracy, but he had left quickly once Morris brought out his legally-carried handgun and fired a shot in the air. Not wanting a repeat of

that incident, Morris started his vehicle and left to go get a soft drink at a nearby convenience store.

When Morris returned a bit later, an unfamiliar truck was now in the driveway, and he saw no sign of Little. Figuring Tracy had been in the truck and was now home, he approached the building, thinking he would retrieve belongings which he had left in Tracy's apartment. Morris knocked on the front door. There was still no answer, despite the presence of the truck in the driveway. After persistent knocking, Tracy came to the door and looked through the glass at Morris. He could see Simmons still in the apartment and saw him bend down as if he were reaching for something. At that moment, Little appeared from the side of the building, startling Morris. Fearing he had been set up and knowing he had a large amount of cash on him, Morris began to remove his gun from his pocket when it became tangled with his keys and fired.

The bullet hit the window of the front door of Tracy's apartment and grazed her scalp. Little fled. Morris entered the apartment, grabbed his belongings and left. He found out only later that the bullet had grazed Tracy's scalp.

Tracy didn't realize at first that she had been hit by the bullet, but once she did, she went to the hospital. She was admitted and hospitalized for three days, discharged with directions to take antibiotics, and given a prescription for Tylenol with codeine for pain.

Morris later found out that the bullet had hit Tracy. He hired an attorney and made preparations to turn himself in to the police; however, he was arrested before he could do so. He was charged with attempted murder, assault in the first degree and burglary in the first degree.

After a trial, he was convicted only of assault in the second degree and was acquitted of all other charges. He was sentenced to six years of imprisonment. He appealed to this Court as a matter of right. Finding multiple prejudicial errors were committed by the trial court, we reverse and remand.

## ANALYSIS

### 1. Instruction on Assault in the Fourth Degree

### a. Standard of Review

The first alleged error concerns whether the trial court erred when it refused to instruct the jury on assault in the fourth degree as a lesser-included offense of assault in the first degree. Issues concerning whether a trial court has properly declined to instruct the jury as requested are reviewed for an abuse of discretion.

> A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom. Because such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a

measure of deference from appellate courts that is reflected in the abuse of discretion standard.

*Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

### b. Analysis

This issue was preserved for our review by Morris' request for instructions on the offense of assault in the fourth degree as a lesser-included offense of the charged offense of assault in the first degree. The trial court denied the request, reasoning that because the method of assault involved a dangerous weapon or deadly instrument, to wit, a handgun, an assault in the fourth degree instruction would not be appropriate, holding that it was not possible for a person to commit assault in the fourth degree whilst using a deadly weapon.

The trial court is simply incorrect on the law. The statute clearly provides that if a person acts recklessly and causes injury to another by means of a deadly weapon or dangerous instrument, such can be assault in the fourth degree. Kentucky Revised Statutes ("KRS") 508.030. As the Kentucky Supreme Court has observed, as long as there is proof to support a jury finding that the accused acted recklessly, the instruction should be given if requested:

> Appellant could not have been convicted of assault in the fourth degree absent evidence that when he struck McCreary, he was acting recklessly, KRS 508.030(1),(2), *i.e.*, that he failed to perceive the risk that McCreary would be injured as a result of being struck in the head with the rifle. KRS 501.020(4). An instruction on a lesser included offense requiring a different mental state

-5-

> from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states.

*Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999).

We review that question as we would any issue concerning sufficiency of evidence, in a light most favorable to the party requesting the instruction, here Morris. "[O]n claim of error in failing to give requested jury instruction, appellate court reviews evidence in light most favorable to party requesting instruction." *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) (citing *Ruehl v. Houchin,* 387 S.W.2d 597 (Ky. App. 1965)). Thus, if Morris presented sufficient evidence that he acted recklessly, he was entitled to the instruction on assault in the fourth degree.

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

KRS 501.020(4).

Morris testified that he never intended to harm Tracy, and both she and Simmons testified that Morris never aimed the gun at either of them. We hold that, based upon this evidence, it would not have been unreasonable for a juror to find that Morris was reckless in placing a loaded handgun in his pocket with an

-6-

instrumentality (keys) which could cause it to discharge *or* that he was reckless in not removing the gun from his pocket in a way which ensured that it would not fire.

It is error not to instruct a jury on a lesser-included offense "if the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged, but conclude that he is guilty of the lesser-included offense." *Webb v. Commonwealth*, 904 S.W.2d 226, 229 (Ky. 1995), *as modified on denial of reh'g* (Aug. 24, 1995) (citing *Luttrell v. Commonwealth*, 554 S.W.2d 75, 78 (Ky. 1977)). "Furthermore, the trial court's failure to give a necessary lesser-included offense instruction cannot be deemed a harmless error." *Commonwealth v. Swift*, 237 S.W.3d 193, 196 (Ky. 2007). "Refusal to allow such an instruction, when supported by the evidence presented, constitutes reversible error." *Webb*, 904 S.W.2d at 229. The error was prejudicial, and the judgment is reversed for a new trial wherein Morris is to receive an instruction on fourth-degree assault as a lesser-included offense.

### 2. Self-defense and Imperfect Self-defense Instruction

#### a. Standard of Review

This allegation of error concerns whether the trial court erred in refusing to instruct the jury concerning self-protection, after first indicating that it would so instruct. When the question concerns whether the trial court erred in

giving an instruction it should not have given, or failed to give an instruction which the evidence reveals should have been given, the proper standard of review is abuse of discretion. *Sargent*, 467 S.W.3d at 203.

### b. Analysis

Morris alleges that the trial court erred in refusing to instruct the jury on self-defense or imperfect self-defense. We agree.

At the outset, we note that Morris indicates in his brief that self-protection instructions were tendered by the defense so as to preserve this issue for appellate review. No such tendered instructions can be found, however, in the record. The video clearly shows defense counsel approach the bench and tender instructions during a discussion about the propriety of instructing the jury on self-protection.

There is a manila envelope in the record marked "Jury Instructions," but the envelope does not indicate who tendered the enclosed proposed instructions. Further, the instructions in that envelope do not contain any self-protection instructions and are date stamped "May 30, 2018"; the discussion concerning self-protection instructions and the tender of proposed instructions by defense counsel occurred on the record on June 1, 2018. Clearly, the proposed instructions were not properly included in the record. However, the Commonwealth does not question the preservation of this alleged error, and the

-8-

discussion of the instruction on the record makes clear the wording of the proposed instructions requested by the defense. We mention this simply to underscore the importance of ensuring that proposed instructions tendered by counsel be included in the record for the review of the appellate court. In this case, the video record supports the allegation of preservation, but in many cases, the tender may not be made in open court and would not appear on the record.

During the discussion concerning instructions, at the close of the proceedings on May 31, 2018, the trial court first indicated that it would instruct the jury on self-defense. The missing tendered instructions were handed to the trial court the next morning, and the prosecution agreed that Morris' testimony supported the giving of the instruction. Overnight, however, the trial court had apparently changed its mind and announced that it would not give the instruction because, it reasoned, accident and self-defense were "mutually exclusive concepts." The trial court expressed that because Morris was outside of the house of another, namely Tracy, he was not entitled to act in self-defense, which is an incorrect statement of the law. The "stand your ground" law, KRS 503.055, and the general self-protection statute, KRS 503.050, are disparate statutes. Morris apparently never requested the KRS 503.055 instruction, so the trial court's conclusion that it does not apply is erroneous.

The self-protection statute at issue here is not the "stand your ground"

or "Castle Doctrine" instruction, but rather, the old-fashioned, common law

grounded self-defense.

> The self-protection statute, KRS 503.050(1), bases the self-defense justification on the *subjective* standard; that is, the defendant's use of force is justifiable if he *actually* believes, correctly or incorrectly, that force is necessary to protect himself from an attack from another person. In contrast, the common law "no duty to retreat" rule and its statutory successor, KRS 503.055(3), predicate a defendant's right to stand his ground and "meet force with force" without retreating from an aggressor on the *objective* standard; that is, when the defendant "reasonably believes" that such force is necessary. Thus, under the statutory language, one's actual belief that his use of defensive force was necessary will preclude a murder conviction, but he can only avail himself of the "no duty to retreat rule" if his belief was objectively reasonable.
>
> Theoretically then, as the Commonwealth's argument goes, a defendant who *truly* holds an *unreasonable* belief that his use of defensive force is necessary for his own protection is *not* entitled to avail himself of the "no duty to retreat" doctrine. The Commonwealth harmonizes these differing statutory standards with an argument that produces this result: the availability of an avenue of escape would not be relevant in the jury's consideration of the murder charge, where refuting the defendant's *actual* (subjective) belief in the need to act in self-defense is an essential element, but it would become relevant to the lesser charge of reckless homicide, where the jury must consider whether the defendant's mistaken belief in the need to act in self-defense was a gross deviation from the reasonable person (objective) standard.

-10-

*Commonwealth v. Hasch*, 421 S.W.3d 349, 362 (Ky. 2013).

We hold that Morris was entitled to instructions on self-protection and imperfect self-protection. If the jury had been instructed on self-protection and believed Morris was entitled to act in self-protection, it would have found him not guilty under the instructions.

If it had been properly instructed, the jury could have alternatively reasonably found that he was reckless in his belief that he needed to protect himself from either Little or Simmons and that belief led him to retrieve his gun from his pocket, which then accidentally fired when the trigger caught on his keys.

> Under the imperfect self-defense theory of reckless homicide, the defendant knows that his conduct could cause another person's death and he actually believes that the use of force is necessary to protect himself from another person. The element of recklessness is supplied by his failure to perceive a substantial and unjustifiable risk that his belief in the need to use force is mistaken.

*Id.* at 356 (citations omitted).

The model instruction reads:

> You will find the Defendant guilty of Fourth-Degree Assault under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about _____ (date) and within 12 months before the finding of the Indictment herein, he caused physical injury to _____ (victim) by _____ (method);

-11-

AND

B. That the _____ (ID weapon) was a dangerous instrument as defined under Instruction No. ___;

C. That in so doing he acted recklessly or as described in D.2 of this Instruction.

AND

D. That in so doing:

    (1) He was not privileged to act in self-protection.

    OR

    (2) Though otherwise privileged to act in self-protection, the Defendant was mistaken in his belief that it was necessary to use physical force against _____ (victim) in self-protection, or in his belief in the degree of force necessary to protect himself and when the defendant cause physical injury to _____ (victim), he failed to perceive a substantial and unjustifiable risk that he was mistaken in that belief, and that his failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation.[1]

The Commonwealth argues that KRS 503.120 precludes the giving of a self-protection instruction here because Tracy was an "innocent party."

When the defendant is justified under KRS 503.050 to 503.110 in using force upon or toward the person of

---

[1] 1 Cooper, *Kentucky Instructions to Juries, Criminal* § 11.09 (5th ed. 2011).

> another, but he wantonly or recklessly injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for an offense involving wantonness or recklessness toward innocent persons.

KRS 503.120(2).

We are unpersuaded by the Commonwealth's argument, which seeks to reduce its burden of proof. First, in this case under these facts, it is a matter of fact for the jury to decide whether Tracy was, indeed, an innocent party, and such determination is not a matter of law for the court to decide. By substituting its judgment for that of the jury on this question, the trial court denied Morris his right to trial by jury. The jury should have been instructed that if they believed that Morris acted recklessly or wantonly and that Tracy was an innocent third person, such findings would preclude finding that Morris acted in self-protection.

It does not appear that either this Court or the Kentucky Supreme Court has ever addressed the question of whether a victim was an "innocent bystander" pursuant to KRS 503.120(2). However, it is a fundamental constitutional precept that trial by jury requires that the jury make factual determinations.

> Indeed, in *Short v. Commonwealth*, 519 S.W.2d 828, 833 (Ky. 1975), this Court quoted at length from *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930), to emphasize the fundamental importance of the jury as the fact-finder in a criminal matter.

-13-

> Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant.

*Commonwealth v. Eckerle*, 470 S.W.3d 712, 724-25 (Ky. 2015).

The Kentucky Supreme Court has had occasion to discuss KRS 530.120(2), but it has never declared that the question of the innocence of a bystander is a factual question for the jury. In *Phillips v. Commonwealth*, the Supreme Court considered a case in which the appellant argued the trial court had erred in not providing a self-protection instruction. 17 S.W.3d 870 (Ky. 2000). In that case, the appellant and another man had been shooting at one another whilst the latter man was fleeing, driving a vehicle in which the victim was a passenger. In affirming the trial court, the Supreme Court determined, the "statute precludes an instruction on self-protection if the defendant's wanton or reckless use of deadly force caused the death of an innocent person. Thus, Phillips was not entitled to an instruction on self-protection as a defense to the wanton murder of [the passenger

in the vehicle]." *Id.* at 875-76. The Supreme Court engaged in no analysis as to whether the jury should determine whether a victim is an "innocent bystander" as it does not appear that question was presented to the Supreme Court for determination.

In *Commonwealth v. Caudill*, the Supreme Court, citing *Phillips*, did not directly address whether the determination that one is a innocent bystander is a question of fact for a jury. 540 S.W.3d 364, 368 (Ky. 2018). In *Caudill*, the facts clearly established that the victims were uninvolved in the squabble and were placed in danger while in their home, which was hit by bullets, thus subjecting them to wanton endangerment. The Supreme Court noted that the trial court had erred in instructing the jury that it had to find that the defendant was not entitled to act in self-protection before finding him guilty of wanton endangerment. However, the Supreme Court held the error was harmless as the jury had found him guilty even under this heightened standard. *Id.* Again, there was no analysis of whether, upon close facts, the determination of "innocent bystander" is a jury question.

Recently, this Court determined in the unpublished matter of *Gilbert v. Commonwealth*, that given close facts, it was error not to instruct the jury on self-protection as to wanton endangerment as to two persons who could have been determined to have either been participants in the events or "innocent bystanders."

-15-

No. 2019-CA-0511-MR, 2020 WL 4555821 (Ky. App. Aug. 7, 2020).[2]  In so

doing, this Court held,

> There was conflicting evidence as to who was the initial aggressor and whether Zacari and Lorenzo were innocent bystanders.  Although it was undisputed that Gilbert accompanied Lindsey to the Amacher home for the purpose of Lindsey to engage in an altercation with Ronnie, Gilbert testified that he did not intend to fight anyone.  Contrary to the Commonwealth's assertion that Gilbert was a trespasser on the Amacher property when he fired his handgun, the evidence does not support that factual assertion.  The witnesses testified that Gilbert was in the street when he fired his gun.
>
> We cannot say that the omitted instructions on the wanton endangerment counts were harmless.  As noted, the trial court did instruct on self-protection and imperfect self-protection as to the assault charge. The jury found Gilbert guilty of assault in the second degree based on those instructions.  Therefore, given that the offenses charged occurred at the same time, it is more than possible that Gilbert was prejudiced by the failure to give the requested instructions.

*Id.* at *6.

---

[2] "Clearly, unpublished cases are not binding precedent. *Estate of Wittich By and Through Wittich v. Flick*, 519 S.W.3d 774, 779 (Ky. 2017); CR 76.28(4)(c)." *Kendall v. Godbey*, 537 S.W.3d 326, 335 (Ky. App. 2017).  However, we may consider *Gilbert* as persuasive authority. CR 76.28(4)(c).

There being no Kentucky precedent on this question, we turn to the jurisprudence of our sister states to guide our analysis. Texas has a substantially similar provision to KRS 503.120(2):

> Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

Tex. Penal Code § 9.05.

In *Dugar v. State*, the accused had shot toward persons pursuing him and his wife in an open-air Jeep, killing an occupant of one of the pursuing vehicles. 464 S.W.3d 811 (Tex. App. Crim. App. 2015). The question was whether the decedent, a passenger in a pursuing vehicle, was an "innocent bystander" after the trial court had refused to instruct the jury on self-protection, citing the above statute as preclusive of the instruction. Reversing the trial court, the Texas Court of Appeals determined whether the decedent was an "innocent bystander" was "a fact question as to whether the complainant was an innocent bystander." *Id.* at 819. Further, the Court ruled, the question of whether the appellant acted "recklessly" was itself a question of fact, such that the jury should be instructed that if it found his actions reckless *and* found the decedent to be an innocent bystander, then it should find the defendant was not privileged to act in

-17-

self-protection. "Whether a person acts recklessly is a determination that can be made only by the finder of fact, which in this case was the jury." *Id.*

It is axiomatic that the prosecution must be held to its burden of proof on each and every element of the crimes for which the jury is to determine guilt or innocence of the accused.

> It is now elementary that the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magnitude."
>
> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)).

Additionally, it was for the jury to determine if Morris' actions were, in fact, reckless once determining Tracy was an "innocent bystander." Had the model instruction been given and adopted to the facts of this case, the jury would have had the option to find that Tracy was not an "innocent bystander," and thus, Morris was entitled to act in self-protection, but that he was mistaken in the belief he needed to use physical force in self-protection, OR that he failed to recognize a

risk and was therefore reckless in his actions, and that he injured an innocent third party in so doing.

If the jury had been instructed on imperfect self-defense, as we find it should have been, it could have found Morris guilty of assault in the fourth degree, rather than assault in the second degree.

> "Imperfect self defense" does not provide for complete exoneration, but instead allows a jury to convict a defendant for a lesser offense, one for which wantonness or recklessness is the culpable mental state. [*Elliott v. Commonwealth*, 976 S.W.2d 416, 420 (Ky. 1998)], Therefore, if the charged offense is first-degree assault, a wantonly held belief in the need for self-protection reduces the offense to second-degree assault and a recklessly held belief reduces the offense to fourth-degree assault.

*Davis v. Commonwealth*, No. 2008-SC-000406-MR, 2009 WL 4251646, at *3 (Ky. Nov. 25, 2009).

A trial judge must prepare and give instructions on the whole law of the case, including instructions on a lesser-included offense, if supported by the evidence. Kentucky Rules of Criminal Procedure ("RCr") 9.54; *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998); *see also Perry v. Commonwealth*, 839 S.W.2d 268, 272 (Ky. 1992). "An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser

-19-

offense." *Houston*, 975 S.W.2d at 929 (citing *Wombles v. Commonwealth*, 831 S.W.2d 172, 175 (Ky. 1992)).

Upon remand, if again requested by Morris, the jury should be instructed on self-protection.

### 3. Character Evidence

#### a. Standard of Review

Rulings on admissibility of evidence are reviewed for an abuse of discretion. "An appellate court's standard of review for admission of evidence is whether the trial court abused its discretion." *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

#### b. Analysis

##### 1. Medical Evidence

Morris raises several issues involving character evidence concerning Tracy which the trial court ruled not admissible on the grounds of relevance.[3] We will address each issue separately.

---

[3] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Kentucky Rules of Evidence ("KRE") 401.

To begin, Morris sought to introduce evidence about Tracy's level of intoxication and drug use on the night of the incident, hoping to implicate her ability to perceive and recall so that the jurors might doubt the reliability of her testimony. The defense entered medical evidence gathered at the hospital when she was treated for the scalp laceration caused by the bullet by avowal, thereby properly preserving the issue for our review.[4] In summary, the defense presented the avowal testimony of the Commonwealth's medical expert, William Smock M.D.,[5] who reviewed the hospital records. Dr. Smock testified outside the presence of the jury that Tracy had tested positive for opiates and cocaine and had a blood alcohol level of .058. He further testified that it appeared that such a low level of alcohol intoxication would not likely affect memory and it was likely that the opiates were given in treatment, but he acknowledged that the cocaine was not administered therapeutically.[6]

---

[4] KRE 103. "We find no such exception to the avowal requirement and reiterate today the holding we reached in *Partin*–an alleged error in the trial court's exclusion of evidence is not preserved for appellate review unless the words of the witness are available to the reviewing court." *Commonwealth v. Ferrell*, 17 S.W.3d 520, 524 (Ky. 2000) (citing *Partin v. Commonwealth,* 918 S.W.2d 219, 223 (1996)).

[5] Dr. Smock is an emergency and forensic physician and was under contract with Louisville Metro Government as a police surgeon.

[6] Dr. Smock testified by avowal that the positive screen for opiates could have reflected pain medications administered in hospital, rather than substances taken prior to the shooting.

Tracy had acknowledged using cocaine the night of the incident during her testimony. While being questioned, Tracy had difficulty recalling specifics. As the Commonwealth acknowledges in its brief, the Supreme Court has held that "[e]vidence of a witness' prior drug use may be admitted insofar as it relates to his possible inability to recollect and relate." *Cantrell v. Commonwealth*, 288 S.W.3d 291, 296 (Ky. 2009) (citing *United States v. Majica,* 185 F.3d 780 (7th Cir. 1999)). The Commonwealth argues that the instances of Tracy's lack of recollection did not relate to the shooting itself, but it cites no authority that such a delineation would render the evidence irrelevant.

Relevant evidence is evidence which tends to prove a consequence of fact. "This standard is powerfully inclusionary and is met upon a showing of minimal probativeness."[7] *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015), *as modified* (May 5, 2016), *as corrected* (Nov. 14, 2016).

At retrial, should Morris desire to introduce the medical evidence concerning Tracy's cocaine use the night of the incident, which she herself acknowledged, he should be allowed to do so after laying a proper foundation.

> The right of an accused in a criminal trial to due process
> is, in essence, the right to a fair opportunity to defend

---

[7] *See* Lawson, THE KENTUCKY EVIDENCE LAW HANDBOOK § 2.05(2)(b) (LexisNexis Matthew Bender) ("The inclusionary thrust of the law of evidence is powerful, unmistakable, and undeniable, one that strongly tilts outcomes toward admission of evidence rather than exclusion.").

against the State's accusations. This right, often termed the "right to present a defense," is firmly ingrained in Kentucky jurisprudence, and has been recognized repeatedly by the United States Supreme Court. An exclusion of evidence will almost invariably be declared unconstitutional when it significantly undermines fundamental elements of the defendant's defense.

*Dickerson v. Commonwealth*, 174 S.W.3d 451, 471 (Ky. 2005) (emphasis added)

(citing *Beaty v. Commonwealth*, 125 S.W.3d 196, 206-07 (Ky. 2003)).

It is crucial to a defendant's fundamental right to due process that he be allowed to develop and present any exculpatory evidence in his own defense, and we reject any alternative that would imperil that right.

*McGregor v. Hines,* 995 S.W.2d 384, 388 (Ky. 1999).

## 2. Reputation for Truthfulness

The second issue of relevant evidence relating to Tracy concerns the trial court's ruling preventing the introduction of evidence of Tracy's reputation for truthfulness, or more particularly, her lack of truthfulness through defense witness Quantez Gibson ("Gibson").

Upon defense counsel's attempting to elicit testimony from Gibson, who knew both Tracy and Morris, about Tracy's general reputation for truthfulness, the Commonwealth objected, arguing that such is not relevant in a case involving an allegation of self-defense. Putting aside the fact that the trial court's evidentiary ruling discussed *supra* eviscerated the self-defense claim, such was an incorrect statement of the law. Further, it was not an appropriate response

-23-

as one of the main contested issues in the trial was whether Little actually was on the scene. The Commonwealth insisted through Tracy's and Simmons' testimony that he was not, while Morris testified that he did see him and his presence was a major factor in Morris fearing for his safety and pulling the gun from his pocket. Thus, Tracy's believability as a witness was key. The trial court ruled the evidence about her reputation for truthfulness not admissible. We hold that ruling was in error.

It must be remembered that the defense Morris presented centered on the fact that he was alerted and suspicious that he was being set up to be robbed of the cash he had on him from cashing his paycheck and so when he saw Little and observed Simmons reach for something when he was on the porch, he feared for his personal safety. Disallowing him to present evidence that he had valid reason to suspect that Tracy was capable of such a scheme and that her testimony was not believable eviscerated his defense. The trial court's error in disallowing Morris' claim of self-defense by not properly instructing the jury was compounded by its ruling that the character evidence was not relevant *given his claim of self-defense.*

The credibility of a witness testifying to relevant evidence is always at issue. *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997). Further, this erroneous ruling abridged Morris' right to present a defense. *Dickerson v. Commonwealth*, *supra*; *McGregor v. Hines*, *supra*. On retrial, the admissibility of

evidence of Tracy's reputation for untruthfulness should be evaluated anew, consistent with this Opinion.

### 3. Specific Instances of Conduct

Last, the trial court refused to allow the defense to present evidence of specific instances of conduct of Tracy pursuant to KRE 608. The evidence involved a trip to a Kroger store after the shooting wherein Tracy alleged she became anxious and afraid after she thought she saw Morris in the store. Expressing fear, she approached an employee and asked for assistance to be escorted to her vehicle, telling the employee she had seen the man in the store who had shot her some time before. Tracy then left the store, escorted, without paying for the groceries in her cart. She was later charged with theft by unlawful taking for the incident. At Morris' trial, she claimed to have difficulty remembering the Kroger incident or being charged with theft, even after watching the video outside of the presence of the jury. The Commonwealth stipulated that Morris was not in the store at that time, implicating Tracy's honesty. The defense questioned her about other instances of shoplifting in her past, and she was likewise loath to provide cogent testimony in response to these questions.

Theft offenses directly bear on a person's propensity to be truthful.

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.

-25-

They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. No specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry.

KRE 608(b).

To be admissible under KRE 608, the evidence must be probative of truthfulness or untruthfulness. Extrinsic evidence is not allowed to challenge the testimony of a witness being subjected to cross-examination about his or her truthfulness, but KRE 609 does allow evidence of convictions.

General rule. For the purpose of reflecting upon the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record if denied by the witness, but only if the crime was punishable by death or imprisonment for one (1) year or more under the law under which the witness was convicted. The identity of the crime upon which conviction was based may not be disclosed upon cross-examination unless the witness has denied the existence of the conviction. However, a witness against whom a conviction is admitted under this provision may choose to disclose the identity of the crime upon which the conviction is based.

KRE 609(a).

Thus, extrinsic evidence is admissible if a witness denies having been convicted. When Tracy denied that she had walked out of Kroger with unpaid merchandise after falsely telling an employee that the man who had shot her previously was in the store and testified that she did not even remember the event for which she was eventually charged and convicted, the defense should have been entitled to confront her with the conviction under KRE 609.

Because the jurors' opinion of Tracy's veracity was relevant to their duty in determining which testimony to credit, such was error. On retrial, the trial court should be mindful of KRE 608 and KRE 609 and rule accordingly, depending upon the testimony offered. *See generally Allen v. Commonwealth*, 395 S.W.3d 451 (Ky. 2013).

### 4. Exclusion of Evidence Relating to Level of Injury.

#### a. Standard of Review

As stated *supra*, rulings on admissibility of evidence are reviewed for an abuse of discretion.

#### b. Analysis

The penultimate assignment of error involves the same videotape evidence from Tracy's later shopping excursion to a local Kroger store after which she was charged with theft for shoplifting. The defense argued that it should also be able to show portions of the surveillance video obtained from the store to show

that Tracy had no apparent problems with vision, which she alleged in her testimony stemmed from the bullet which grazed her scalp and which the Commonwealth employed as proof of serious physical injury. The defense argued that the video would assist the jury in determining whether the injury Tracy suffered was a physical injury or a *serious* physical injury, a determination necessary given the crimes charged.

As the jury was instructed, after determining Morris was not guilty of attempted murder or assault in the first degree assault, it was left only with the options of acquitting him completely or finding him guilty of second-degree assault, which it did.[8] The jurors were not required to delineate under which theory of second-degree assault they found the evidence satisfied; the jury could have found Morris guilty either because he intentionally caused physical injury to Tracy or because he wantonly caused serious physical injury to Tracy. Thus, it is not clear whether the jury was convinced that Tracy was seriously injured as it could have found Morris intentionally caused her only physical injury.

In any event, the video evidence of Tracy shopping, excluding any portions of the video showing the theft occurrence, was relevant evidence which

---

[8] We have already determined *supra* that the trial court erred in not instructing the jury on the whole law of the case in failing to instruct on fourth-degree assault as a lesser-included instruction, so we will analyze this assignment of error considering not only the instructions which were given the jury, but also as to the missing fourth-degree assault instruction.

went to the question of whether there were lasting effects of the injury she received. The Jury Instructions provided the following definition of "serious physical injury:"

> [P]hysical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.

Therefore, the jury was expressly charged with determining whether Tracy's injuries were serious. Because of this duty, the evidence of her ability to shop was relevant, particularly when Tracy had previously told treating medical professionals that she had no vision problems. The relevance of the video is also implicated by the excluded evidence of Tracy's truthfulness as it is objective evidence wherein she was in her "natural" state, as she was not intent on convincing a trier of fact as to her ongoing quality of vision.

> Questions of admissibility start with KRE 401, which permits evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Burchett v. Commonwealth*, 98 S.W.3d 492, 496 (Ky. 2003).

If the jury believed Tracy's injury was not a serious physical injury, and that Morris was reckless and that he was either not entitled to act in self-protection or engaged in imperfect self-defense, they should have found him guilty not of second-degree assault, but fourth-degree assault. Thus, by not providing

relevant evidence on a fact of consequence, *i.e.*, and element of a criminal offense of which we have found the jury should have been instructed, the trial court erred to Morris' prejudice.[9]  On retrial, all evidence of consequence should be admitted.

### 5. Prosecutorial Misconduct

#### a. Standard of Review

The standard of review on allegations of prosecutorial misconduct is whether the misconduct "was of such an 'egregious' nature as to deny the accused his constitutional right of due process of law." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 411 (Ky. 1987).  The gravamen is whether the trial was fair overall, not focusing exclusively on the egregiousness of the misconduct of the prosecution. *Parker v. Commonwealth*, 291 S.W.3d 647, 659 (Ky. 2009).

#### b. Analysis

Because we have found several errors require reversal of Morris' conviction and have already determined to remand this matter to the trial court for a new trial absent the prejudicial errors we have identified *supra,* we will address this assignment of error only to caution the prosecution to take care not to comment upon the exercise of an accused's Sixth Amendment rights in a pejorative manner.  The United States Constitution grants all persons accused of a

---

[9] It should be noted that assault in the fourth degree is a Class A misdemeanor, while assault in the second degree is a Class C felony.

crime the right to counsel, and no inference should be invited when a person avails himself or herself of that right. Counsel should take care not to repeat this occurrence at retrial. If such occurs, the trial court is reminded of its duty to admonish the jury upon an instance of improper questioning when such is requested by the aggrieved party. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970).

For the foregoing reasons, we hold that the trial court's errors led to a fundamentally unfair trial. We reverse Morris' conviction and remand this matter to the Jefferson Circuit Court for a new trial.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky